OPINION OF THE COURT
Richard F. Kuhnen, J.
The petitioner moves, pursuant to CPLR 7511 (subd [a]), for an order vacating in part an award of a master arbitrator on the ground that he exceeded his power in making portions of the award and that they were also capricious, arbitrary, and without a rational basis.
Petitioner, a Deputy Broome County Sheriff, was injured on May 13, 1979, while operating a motor vehicle in the course of his employment. His injuries have prevented his return to work except for a few short periods and he has been totally incapacitated from work since July 7, 1980. During his first three periods of absence, May 13 to July 3, 1979, August 11 to September 7, 1979, and October 14, 1979 to February 1, 1980, he received his full salary. However, it was paid on the basis of and at the expense of accrued sick leave and unused vacation time to which he was entitled in any event under a labor agreement and which such payment fully depleted.
Although he was also entitled to workers’ compensation for the three periods and, in fact, was awarded it, he never actually received it as the compensation board ordered it to be reimbursed, pursuant to section 25 (subd 4, par [a]) of the Workers’ Compensation Law, to his employer, Broome County. As the county was self-insured, this represented only a paper transaction. In July of 1980, when he was no longer able to work and when he no longer had any unused sick leave and vacation time to be forfeited in return for salary he then began to receive and retain workers’ compensation benefits.
As the operator of a motor vehicle at the time of his injury, petitioner was entitled also to no-fault benefits under article 18 of the. Insurance Law. His attorney filed a claim on his behalf for such benefits with respondent Aetna, Broome County’s insurance carrier, on December 6, 1979. Between that date and November 12 of the following year, five additional letters by his attorney and a number of phone calls by him to Aetna in reference to the claim *1082 were evidently ignored although Aetna claims to have sent a denial of the claim directly to petitioner on March 30, 1980, which he said he never received. On December 5, 1980, petitioner filed, pursuant to subdivision 2 of section 675 of the Insurance Law, a request for arbitration.
Arbitration was thereafter conducted in March of 1981 before Thomas J. McAvoy as arbitrator. He made a decision on March 24, 1981, awarding loss of earning benefits subsequent to July 1, 1980, as to which there was no dispute as to amounts. However, loss of earnings for 1979 periods through February 3, 1980, involved a still unresolved legal question of retroactivity presented by the decision in Kurcsics v Merchants Mut. Ins. Co. (49 NY2d 451), interpreting section 671 of the Insurance Law, as to monetary limitation per month. The arbitrator therefore computed the award for those periods at both rates pre- and post -Kurcsics to await a final resolution to the legal question of application.
In making the award, the arbitrator, although his decision is silent on the subject, necessarily rejected respondent’s contention in its memorandum of law submitted “that the applicant is not entitled to any benefits because, pursuant to the provisions of Section 671 of the Insurance Law he was reimbursed by his employer and has not suffered a reduction in the level of future benefits which might arise from a subsequent illness or injury” (see Insurance Law, § 671, subd 2, par [c]).
The master arbitrator too rejected this argument and, in the opinion of the court, correctly. It is clear that in accepting his regular wages during these periods, petitioner received them only on the basis of unused vacation time and sick leave which in fact did result in a reduction in his level of future benefits in the event he suffered a subsequent injury or illness. However, the master arbitrator limited the award for the pre-July 7, 1980 periods to a maximum of $800 per month based on the applicable Insurance Department regulation (11 NYCRR 65.15 [n] [2] [xi]), subject to increase, with interest in the event Kurcsics (supra), should be held to be retroactive. In addition, the master arbitrator held that any amounts recovered or recoverable from workers’ compensation would have to be *1083 deducted from the no-fault benefits, whether paid directly or reimbursed to the employer. Petitioner asserts that at no time prior to the initial award was this issue raised by respondent and that it was therefore not an issue for arbitration.
On August 25,1981, petitioner requested clarification of the master arbitrator’s award on the question of the compensation offset and also on the proper date from which interest should run. On September 17, 1981, the master arbitrator issued a supplemental award in which he reaffirmed his decision as to the compensation offset and held that interest on the award should be interrupted from August 30,1980 (30 days after respondent’s denial of claim form) to December 5, 1980 (filing of the demand for arbitration).
Petitioner’s application to the court to vacate the award as to the compensation offset and the interruption of interest is opposed by respondent on the ground (1) that it is not timely, (2) that the compensation offset is correct under the law and that the arbitrator had the right to consider that question even if not raised by respondent, and (3) that the interest question was also correctly decided.
I. TIMELINESS OF THE PROCEEDING
CPLR 7511 (subd [a]) provides that “[a]n application to vacate or modify an award may be made by a party within ninety days after its delivery to him.”
A regulation of the New York State Department of Insurance has imposed two conditions precedent on the exercise of this statutory right (11 NYCRR.65.17 [i] [2]): “A party who intends to commence an article 75 proceeding or an action to adjudicate a dispute de nova shall, within 21 days of mailing of a master arbitrator’s award, give written notice of such intention to all other parties to the arbitration. Failure to give such notice shall constitute a waiver of any right to review an award of a master arbitrator. If the party giving such notice is an insurer, the notice shall be accompanied by payment of all amounts set forth in the master arbitration award which will not be the subject of judicial action or review. Failure to commence an article 75 proceeding, or action to adjudicate a dispute de nova within *1084 30 days of the mailing of such notice of intention, shall constitute a waiver of any right to review a decision of a master arbitrator.”
It is conceded that petitioner, in instituting this proceeding, did not comply with either condition. It is also conceded that the proceeding was brought within 90 days of the master arbitrator’s supplemental award but not within 90 days of his initial award.
Respondent takes the position that the application should be dismissed for failure to comply with the regulation quoted and that in any event it should be dismissed for failure to comply with CPLR 7511 (subd [a]) as the request for reargument or clarification did not extend petitioner’s time to appeal under CPLR article 75.
Addressing first the second contention, the court agrees that a motion for reargument, made after the time for appeal has expired, does not extend the time to appeal (Deeves v Fabric Fire Hose Co., 14 NY2d 633; Matter of Williamson v Shang, 73 AD2d 836). However, here the request for clarification was made prior to the expiration of the 90-day limitation of CPLR 7511 (subd [a]), in fact, less than one month after the master arbitrator’s original award. While the safer practice would have been for the petitioner to file an appeal before the expiration of the 90 days in addition to the request for clarification (see Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C222L8, p 158), fortunately for petitioner the master arbitrator did entertain the request and issued a supplemental award. This appeal in the statutory form of an application to vacate or modify is thus timely taken from the supplemental award and as a matter of law brings up for review the original award.
Nor do we consider that the failure to comply with the quoted regulation of the Insurance Department renders this application untimely and compels a denial. We agree with petitioner that the conditions imposed by the regulation were beyond the power of the Insurance Department to make and are in direct conflict with and a limitation upon CPLR 7511 (subd [a]).
*1085 The authority delegated to the Superintendent of Insurance by section 675 of the Insurance Law is to promulgate or approve “simplified procedures” for vacating or modifying an award “by a master arbitrator”. It does not purport to — and could not — authorize revisions of or additions to statutory provisions of the CPLR.
The intervenors, the Superintendent of Insurance and the department, defend the regulation as within the power of the superintendent to make, under section 21 of the Insurance Law, which empowers him to “prescribe, in writing, official regulations, not inconsistent with the provisions of this chapter * * * interpreting the provisions of this chapter”. They cite Ostrer v Schenck (41 NY2d 782, 785), in which the Court of Appeals confirmed the fact that sections 21 and 10 of the Insurance Law “vest the superintendent ‘with broad power to interpret, clarify, and implement the legislative policy’. (Breen v Cunard Lines S.S. Co., 33 NY2d 508, 511.)” We do not quarrel with that well-recognized principle but point out that it is at all times subject to another well-accepted principle, which Judge Jasen mentioned in the same Ostrer case (p 785): “Provided that his [the superintendent’s] regulations are not inconsistent with some specific statutory provision”. This same proviso was mentioned recently in Larkin v Insurance Co. of North Amer. (109 Misc 2d 944), in which Mr. Justice Zeller upheld a regulation of the Insurance Department directing arbitrators how to make no-fault awards pending final determination by the Court of Appeals of the retroactive effect of the Kurcsics decision. It is to be noted that the regulation there under consideration dealt with practice of the arbitrator, not with practice in another forum, the court, after the arbitrator has completed his work by making an award.
The preceding is also an answer to the Attorney-General’s argument that “[o]nce having selected the arbitrative route petitioner is bound by the- rules and regulations governing the arbitration process” (emphasis supplied). We agree, but once the arbitration process was completed, petitioner was subject to the rules of the body to which his appeal was taken.
The decisions in State Farm Mut. Auto Ins. Cos. v Brooks (78 AD2d 456) and Matter of Rachlin v Lewis (96 Misc 2d *1086 701) are in full accord with our discussion above. The first upheld a regulation of the Insurance Department which permits a no-fault insurer to reduce first-party benefits to a claimant when his employment is terminated for reasons other than his disability as a reasonable interpretation of the no-fault statute and not inconsistent with any specific statutory provision. Rachlin upheld Insurance Department regulations implementing specific statutory authority of the department in section 75 of the Insurance Law to regulate fees recoverable from an insurer in no-fault cases, but struck down as unauthorized a regulation as to fees or disbursements recoverable from the client. (See, also, State Div. of Human Rights [Valdemarsen] v Genesee Hosp., 50 NY2d 113; Finger Lakes Racing Assn, v New York State Racing & Wagering Bd., 45 NY2d 471; Matter of Jones v Berman, 37 NY2d 42.)
We conclude therefore that the regulation here in issue was beyond the authority of the superintendent to promulgate or approve and that petitioner’s application is therefore timely.
II. THE WORKERS’ COMPENSATION OFFSET
Petitioner challenges the award and supplemental award in offsetting workers’ compensation benefits against the no-fault benefits as beyond the power and authority of the master arbitrator to make and, in any event, arbitrary and capricious.
As pointed out, the arbitrator and the master arbitrator both rejected the argument that petitioner was not entitled to no-fault loss of earnings between May 13, 1979 and February 1, 1980, because he received his full salary during that period. As indicated, the court agrees with his determination, based on the fact that the salary was received at a loss of accrued vacation time and sick leave time rather than as a gratuitous payment.
However, the master arbitrator, in the award and supplemental award, ruled that the no-fault loss of earnings benefits should be offset by the workers’ compensation reimbursed to the employer. This issue was never raised in the initial arbitration or in the initial arbitration before the master arbitrator. Nevertheless he directed the offset *1087 and petitioner argues that this “was clearly beyond the scope of the master arbitrator’s authority because the issue was not before him and had not been included in the arbitration award under review”, citing 11 NYCRR 65.17 (c) (6): “The master arbitrator shall only consider those matters which were the subject of the arbitration below or which were included in the arbitration award appealed from.”
The issue was raised for the first time by respondent after the initial award. Respondent concedes this but argues that it became an issue only after rejection of its main argument that petitioner was not entitled to any no-fault benefits because he received his full wages. “If successful on this issue”, respondent says, “the issue now raised by Petitioner would never have become a matter of concern. Once this issue is rejected, as it was, then the question of an offset under Insurance Law § 671(2)(b) becomes an issue”.
The answer to this argument is that respondent should necessarily have anticipated possible rejection of the issue it did raise and a careful pleader would have raised the alternative defense of the compensation offset (CPLR 3014) in the event of such rejection.
There is perhaps more merit to respondent’s argument that the offset issue was a matter of Insurance Department regulations and “[sjince the arbitrator did not offset the compensation award [against salary], his decision by its very terms included the matter and preserved it for review” and that in any event “[a] Master Arbitrator has broad powers of review which include the right to vacate awards ‘infected by an error of law’, Smith v. Fireman’s Insurance Company, 80 A.D.2d 702, 436 N.Y.S.2d 467 (3rd Dept., 1981).” However, we do not find it necessary to decide that question in view of our opinion that the master arbitrator was in error as a matter of law in offsetting the compensation award against the no-fault first-party benefits to which he held petitioner entitled.
Under section 671 (subd 2, par [b]) of the Insurance Law “first party benefits” must be offset by “amounts recovered or recoverable” under “workmen’s compensation benefits”. *1088 But petitioner did not recover any workers’ compensation benefits for the pre-July 7, 1980, periods of absence because he was receiving his full salary by way of vacation and sick leave benefits.
The same logic which convinced the master arbitrator not to bar no-fault benefits (that petitioner in effect was not gratuitously paid his salary) should have convinced him not to offset a compensation award which petitioner in fact never received. Respondent was responsible for payment of no-fault benefits, but not workers’ compensation which the carrier, the County of Broome, in effect never paid.
In a sense the master arbitrator is thus inconsistent in denying an offset in one instance and not in the other. The result is that petitioner receives not a double recovery, which the statute is designed to prevent, and not even a full 80% or more single recovery, which the statute was designed to insure. Disregarding the salary to which he was entitled in any event for vacation and sick leave time, he now finds himself entitled only to first-party no-fault benefits less workers’ compensation never received, a result surely never intended by article 18 of the Insurance Law.
The situation in which petitioner finds himself as a result of the master arbitrator’s ruling is well summarized by his counsel: “Petitioner is simply attempting to achieve the same position as anyone else who is eligible for both Workers’ Compensation and no-fault benefits. Had Petitioner not had available his unused sick leave and vacation pay the instant issue would never have arisen. For example, if he were only recently hired at the time of the accident and not yet entitled to any sick leave or vacation time, he would have received the Workers’ Compensation payments himself as well as the no-fault benefits, the two amounts totalling 80% of his lost earnings. The fact that Petitioner received his full pay for a period of time as a result of having to his credit unused sick leave and vacation time clouded the issue and has resulted in an injustice. As the Arbitrator and Master Arbitrator both held, the Respondent could not invoke the salary payments to offset Petitioner’s no-fault benefits because they represented not *1089 gratuitous payments by the employer but entitlements which Petitioner had earned during the course of his employment and which were used up and depleted as Petitioner was paid his salary. As such, both Arbitrators properly excluded them as offsets under Insurance Law Section 671(1) and they would not even have come into play thereafter but for the fact that, by virtue of Petitioner having received them, the employer and not Petitioner was now entitled to receive the benefit of the Workers’ Compensation award under WCL Section 25(4)(a). As a result thereof, far from occupying the enviable position described by the Respondent in its Memorandum, Petitioner finds himself in the position of having used up all his sick leave and vacation entitlement, having never received his Workers’ Compensation award, and having received a greatly reduced no-fault award on the misguided theory that the Workers’ Compensation award should somehow be imputed to him.”
Compare Grello v Daszykowski (44 NY2d 894, 896) in which the Court of Appeals, in an analogous situation, held that workers’ compensation benefits of which the worker ultimately was deprived could not be offset against no-fault loss of earnings benefits as “ ‘amounts recovered or recoverable * * * under * * * laws providing * * * workmen’s compensation benefits’ (Insurance Law, § 671, subd 2).”
We agree therefore with petitioner that the award and supplemental award are in this respect in error as a matter of law and therefore arbitrary and capricious and without rational support.
III. THE INTEREST ISSUE
In his supplemental award the master arbitrator held that interest on the award, under the applicable regulations of the Insurance Department, is due from January 5, 1980 (30 days after the claim was filed) to August 3, 1980 (30 days after the denial of claim form). He also held that: “The interest obligation was then stayed until the filing of the arbitration demand on December 5, 1980. Respondent should have sent notice of the Denial of Claim form to the applicant’s representative’s office, i.e., the attorneys who *1090 filed the original claim. On the other hand, the applicant’s representative should have sought arbitration earlier, rather than allowing a full year to elapse from the original claim to the arbitration demand.”
From December 6, 1979, when the claim was filed, to November 12 of the following year, as recited above, the applicant’s attorneys sent five additional letters to respondent Aetna requesting reply and made numerous phone calls, both of which petitioner says were ignored, but admittedly it was not until December 5,1980, that arbitration was demanded. If there was any fault it was attributable to respondent as much as to petitioner, if not more so. No denial of receipt of the claim and of the five written inquiries and the phone calls was made by respondent or that it failed to send a denial of claim form to petitioner’s counsel. Perhaps petitioner’s counsel waited overlong in demanding arbitration, but in the absence of an outright denial of the claim it is understandable that they hesitated to resort to the time and expense of arbitration.
Nevertheless we deny the application to vacate the award as to the suspension of interest. Our scope of review of an arbitration award is limited to a determination of whether it has any rational basis. That we may have a mere difference of opinion as to what should have been decided, as we have here, is insufficient to disturb the award and we therefore decline to do so. (See Matter of Furstenberg [Aetna Cas. & Sur. Co. — Allstate Ins. Co.], 49 NY2d 757; Matter of Garcia v Federal Ins. Co., 46 NY2d 1040; Matter of Shand v Aetna Ins. Co., 14= AD2d 442.)
The award and supplemental award of the master arbitrator are in part vacated and in part affirmed, as indicated.