**In the Matter of an Arbitration between HARRY HOFFMAN PRINTING, INC., Holling Press (Ward Burns, Inc.), Pollack Printing Corporation, Manhardt–Alexander, Inc., Thorner–Sidney Press, Inc., Kenworthy Graphic Services, Inc., and Savage Litho Co., Inc., constituting the sole and exclusive members of the Litho Negotiating Group, Petitioners–Appellants,**

v.

**GRAPHIC COMMUNICATIONS, INTER-NATIONAL UNION, LOCAL 261 (formerly Graphic Arts International Union, Local 261), Respondent–Appellee.**

No. 1399, Docket 89–9102.

United States Court of Appeals, Second Circuit.

Argued May 23, 1990.

Decided Aug. 31, 1990.

Walter D. Kogut, Syracuse, N.Y. (Nicholas J. Fiorenza, Scolaro, Shulman, Cohen, Lawler & Burstein, Syracuse, N.Y., of counsel), for petitioners-appellants.

E. Joseph Giroux, Jr., Buffalo, N.Y. (Law Offices of E. Joseph Giroux, Jr., Buffalo, N.Y., of counsel), for respondent-appellee.

Before VAN GRAAFEILAND, MESKILL and WALKER, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from a judgment entered in the United States District Court for the Western District of New York, Elfvin, *J.*, dismissing appellants' petition to vacate an arbitration award as barred by the statute of limitations. The petition sought vacatur of the award pursuant to section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and section 10 of the United States Arbitration Act ("Arbitration Act" or "Act"), 9 U.S.C. § 10. The district court held that New York's ninety day time limit on applications to vacate arbitration awards, N.Y.Civ. Prac.L. & R. (CPLR) 7511(a) (McKinney 1980), applies to appellants' petition, rather than the three month statute of limitations contained in section 12 of the Arbitration Act, 9 U.S.C. § 12. The court further held that the petition was untimely under the New York statute. We conclude that the New York statute of limitations does apply, but that the petition was timely brought. Accordingly, we vacate the district court's judgment and remand for consideration of the merits of appellants' petition.

## BACKGROUND

Appellants are seven employers engaged in the printing business that have formed a multiemployer bargaining association called the Litho Negotiating Group (Litho). These employers have maintained a collective bargaining relationship with respondent, Graphic Communications International Union, Local 261 (the "union" or "Local 261"), for many years. In July 1983, Local 261's sister union went on strike against the Litho employers, and employees repre-

sented by Local 261 refused to cross the picket lines. When the strike ended in mid-October 1983, the Local 261 employees wished to return to their jobs. The Litho employers informed the union, however, that they had permanently replaced many Local 261 employees.

Local 261 filed a grievance, asserting that the collective bargaining agreement, which expired by its terms on October 1, 1983, precluded the employers from hiring permanent replacements. The employers contended that the collective bargaining agreement could not bar the hiring of replacements because it had expired. The union sought arbitration of its grievance. In response, the Litho employers petitioned the United States District Court for the Western District of New York, Elfvin, J., to stay the arbitration. The court denied the employers' petition and granted the union's cross-petition to compel arbitration. *Harry Hoffman Printing, Inc. v. Graphic Communications Int'l Union, Local 261,* No. 84–59E (W.D.N.Y. Jan. 31, 1985). We affirmed the district court's decision by summary order. 767 F.2d 907 (2d Cir. 1985).

The issues submitted to the arbitrators were (1) whether the dispute was arbitrable, and if so, (2) whether the employers breached the collective bargaining agreement by hiring permanent replacements. If the arbitrators found such a breach, the issue of damages was to be submitted to a second arbitration panel. The arbitrators ruled that the dispute was arbitrable, and that the Litho employers had breached the collective bargaining agreement as to those replacements hired before October 1, 1983. This decision was delivered to the employers on July 27, 1988.

On August 15, 1988, the employers applied to the arbitrators for a modification of the award, claiming that the arbitrators had made typographical errors and miscalculations of figures, and had decided an issue not submitted to them. The arbitration panel denied the application to modify on September 6, 1988, although it gave the parties permission to correct the typographical errors.

On October 26, 1988, ninety-one days after delivery of the arbitrators' award to the employers, the employers filed the present petition to vacate the arbitration award pursuant to LMRA section 301, 29 U.S.C. § 185, and section 10 of the Arbitration Act, 9 U.S.C. § 10. The union moved to dismiss the petition as untimely. The district court held that state statutes of limitations apply to actions brought under LMRA section 301, and therefore New York's ninety day time limit on applications to vacate arbitration awards, CPLR 7511(a), applies. The court further held that the limitations period began to run on the date of delivery of the award, July 27, rather than on September 6, the date on which the application to modify the award was denied. Accordingly, the court dismissed the employers' petition as untimely without reaching the merits.

## DISCUSSION

The Litho employers argue that the district court erred in dismissing their petition because (1) the three month statute of limitations contained in the Arbitration Act applies, rather than the ninety day statute of the CPLR, and (2) even if the New York statute applies, the action was timely because the limitations period accrued on September 6, 1988, the date on which the arbitrators rendered a decision on the employers' application to modify the award.

### A. *Arbitration Act or CPLR?*

Litho's petition apparently would be timely under the Arbitration Act's three month statute, if applicable, because the petition was filed on October 26, exactly three months after the arbitrators' July 27 decision. Litho's argument as to why the Arbitration Act should apply is essentially a three-part syllogism: (1) both section 301 of the LMRA and section 10 of the Arbitration Act provide the district court with subject matter jurisdiction to hear a petition to vacate an arbitration award; (2) section 12 of the Arbitration Act, 9 U.S.C. § 12, provides for a three month time limit on petitions to vacate, while the LMRA contains no statute of limitations; therefore (3) the

Arbitration Act's statute of limitations should apply. This argument is seriously flawed.

■ The primary defect is that section 10 of the Arbitration Act does not confer subject matter jurisdiction on a district court. Section 10 states in part that "the United States court in and for the district wherein the award was made may make an order vacating [an arbitration] award." 9 U.S.C. § 10. This language is less than precise, and might be read as conferring subject matter jurisdiction. However, we have consistently held that Congress did not intend the Arbitration Act as a grant of jurisdiction. There must be an independent basis of jurisdiction before a district court may entertain petitions under the Act. *See, e.g., Ballantine Books, Inc. v. Capital Distrib. Co.*, 302 F.2d 17, 19 (2d Cir.1962) (petition to confirm award under Arbitration Act section 9); *Metro Indus. Painting Corp. v. Terminal Construction Co.*, 287 F.2d 382, 384 (2d Cir.) (petition to compel arbitration under section 4), *cert. denied*, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961). Recent Supreme Court cases have confirmed this view. In *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), Justice Brennan stated: "The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction." *Id.* at 25 n. 32, 103 S.Ct. at 942 n. 32; *see also Southland Corp. v. Keating*, 465 U.S. 1, 15 n. 9, 104 S.Ct. 852, 861 n. 9, 79 L.Ed.2d 1 (1984); *Drexel Burnham Lambert, Inc. v. Valen-*

*zuela Bock*, 696 F.Supp. 957, 959–61 (S.D. N.Y.1988); 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3569, at 170–73 (2d ed.1984).[1]

Litho contends that the Arbitration Act gave the district court power to hear the petition by virtue of the "continuing jurisdiction" theory recognized in *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698 (2d Cir.1985), *cert. denied*, 475 U.S. 1067, 106 S.Ct. 1381, 89 L.Ed.2d 607 (1986). In *Smiga*, which involved a petition to confirm an arbitration award under section 9 of the Act, we stated that "a court [that] orders arbitration retains jurisdiction to determine any subsequent application involving the same agreement to arbitrate, including a motion to confirm the arbitration award." *Id.* at 705. Because the district court compelled arbitration in this case, Litho argues, it retained jurisdiction under the Arbitration Act to vacate the award. This argument is based on a misreading of *Smiga*.

In *Smiga* we recognized the requirement that there be an independent basis of jurisdiction before a district court may entertain petitions under the Arbitration Act, and noted that the parties there were diverse. *Id.* at 703–04. The question in *Smiga* was whether the parties had agreed to confirmation of the arbitration award as required by section 9, which allows a district court to confirm an award only "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award." 9 U.S.C. § 9. The parties in *Smiga* had made no such agreement. It was in this context that we stated that the district court "retained jurisdiction" to confirm the award because it had previously compelled arbitration. Our holding, therefore, was

---

1. In *Kallen v. District 1199, Nat'l Union of Hospital and Health Care Employees*, 574 F.2d 723 (2d Cir.1978), we noted that the broad language of sections 9 and 10 of the Act might be read as a grant of subject matter jurisdiction, while the language of sections 3, 4 and 8 eliminates this possibility. *See id.* at 726 & n. 6. The Supreme Court cases decided since *Kallen*, which clearly state that "the Arbitration Act" does not operate as a grant of jurisdiction, resolve this ambiguity. Although the Court in both *Moses H. Cone Memorial Hospital* and *Keating* supported its conclusion by referring to the language of sections

3 and 4 of the Act, rather than section 10, it would be anomalous to conclude, for example, that section 4 confers no jurisdiction to compel arbitration, but that section 10 confers jurisdiction to vacate an award once arbitration has taken place. *See Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 747–48 n. 7 (8th Cir.), *cert. denied*, 476 U.S. 1141, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986). Further, to read section 10 as bestowing jurisdiction to vacate absolutely any arbitration award would open the federal courts to a host of arbitration disputes, an intent that we should not readily impute to Congress.

that if a district court compels arbitration—an act that requires an independent basis of subject matter jurisdiction—it may confirm the award despite the absence of an agreement as to confirmation, *not* that the Arbitration Act creates federal subject matter jurisdiction.

■ Thus, the sole source of subject matter jurisdiction in this case for both the district court's order compelling arbitration and Litho's petition to vacate the award is section 301(a) of the LMRA. *See, e.g., General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co., Inc.,* 372 U.S. 517, 519, 83 S.Ct. 789, 791, 9 L.Ed.2d 918 (1963) (per curiam) (district court has jurisdiction under section 301 to enforce arbitration award); *Occidental Chem. Corp. v. International Chem. Workers Union,* 853 F.2d 1310, 1311 (6th Cir.1988) (suit to vacate arbitration award brought under section 301); *Kallen v. District 1199, Nat'l Union of Hosp. and Health Care Employees,* 574 F.2d 723, 725 (2d Cir.1978) (suits to vacate arbitration awards are cognizable under section 301). Because Congress provided no statute of limitations for suits under section 301, "the timeliness of a [section] 301 suit ... is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations." *International Union, United Automobile, Aerospace & Agricultural Implement Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966); *see Reed v. United Transportation Union,* 488 U.S. 319, 323, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989). The only exception to this general rule is a narrow one. Courts should depart from the practice of borrowing state statutes of limitations in section 301 actions only when a federal rule provides a closer analogy than the state limitations period and is more appropriate in light of the federal policies at stake. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 171–72, 103 S.Ct. 2281, 2294–95, 76 L.Ed.2d 476 (1983). The Arbitration Act's three month period is neither more closely analogous than the New York provision nor more appropriate. New York's ninety day time limit on actions to vacate arbitration awards is directly analogous, and we can discern no reason why this limitations period should not apply. Indeed, the Arbitration Act does not even apply to disputes involving collective bargaining agreements. 9 U.S.C. § 1 ("nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce"); *see United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 40 & n. 9, 108 S.Ct. 364, 372 & n. 9, 98 L.Ed.2d 286 (1987) (stating that Arbitration Act does not apply to labor employment contracts but looking to the Act for guidance on issue of under what circumstances a court may set aside arbitration award); *United Food and Commercial Workers, Local Union No. 7R v. Safeway Stores, Inc.,* 889 F.2d 940, 943–44 (10th Cir.1989). This express exclusion of labor contracts negates any argument that the Act's statute of limitations should supplant New York's. Accordingly, the district court correctly applied the New York provision.

We note that several other courts of appeals have addressed the question of what statute of limitations applies to an action to vacate an arbitration award brought under LMRA section 301. Each has refused to apply directly the Arbitration Act's limitations period, and most have used state statutes of limitations. *See, e.g., Posadas de Puerto Rico Assocs., Inc. v. Asociacion de Empleados de Casino de Puerto Rico,* 873 F.2d 479, 482–85 (1st Cir.1989) (rejecting Arbitration Act and applying Puerto Rico's thirty day period); *San Diego County District Council of Carpenters v. G.L. Cory,* 685 F.2d 1137, 1139–42 (9th Cir.1982) (rejecting Arbitration Act period and applying California's 100 day statute); *Edwards v. Sea–Land Serv., Inc.,* 678 F.2d 1276, 1290–92 (5th Cir.1982) (rejecting Arbitration Act and applying Texas' four year statute), *vacated on other grounds,* 462 U.S. 1127, 103 S.Ct. 3104, 77 L.Ed.2d 1360 *on remand,* 720 F.2d 857 (1983); *Sine v. Local No. 992 Int'l Brotherhood of Teamsters,* 644 F.2d 997, 1001–03 (4th Cir.) (rejecting Arbitration Act

and applying Maryland's thirty day statute), *cert. denied,* 454 U.S. 965, 102 S.Ct. 507, 70 L.Ed.2d 381 (1981); *see also International Ass'n of Heat and Frost Insulators, Local No. 12 v. Insulation Quality Enterprises, Ltd.,* 675 F.Supp. 1398, 1402–04 (E.D.N.Y.1988) (rejecting Arbitration Act and applying New York CPLR 7511(a)). The Sixth and Eleventh Circuits have recognized that the Arbitration Act does not apply, but nonetheless have "borrowed" the Act's three month period. *See Occidental Chem. Corp.,* 853 F.2d at 1315–16 (characterizing Michigan's twenty-one day statute as inappropriate because it expressly excludes labor disputes); *American Postal Workers Union v. United States Postal Serv.,* 823 F.2d 466, 473–76 (11th Cir.1987) (declining to apply Florida's ninety day statute of limitations because uniform limitations should apply). Thus, the Eleventh Circuit is the only court to hold that a uniform limitations period should apply, a view with which we cannot agree in light of the well established rule that state statutes of limitations govern actions brought under LMRA section 301. In this case, the New York statute is appropriate, and therefore there is no need to look to the Arbitration Act for guidance.

### B. *When Did the Statute of Limitations Accrue?*

■ To determine when the ninety day period accrued, we must examine the relationship between two sections of the CPLR. CPLR 7509 authorizes a party to apply to the arbitrators within twenty days from delivery of the award for modification of the award. The grounds for modifying are (1) miscalculation of figures or mistake in description of a person, thing or property, (2) the arbitrators' passing upon a matter not submitted to them, and (3) defects in form "not affecting the merits of the controversy." CPLR 7509 (citing CPLR 7511(c)). The opposing party has ten days within which to file objections to the request for modification. The arbitrators are required to dispose of the application within the next thirty days (measured from the earlier of the filing of objections or the expiration of the ten day period for filing

objections) unless the parties agree to extend the time for disposition. Thus, assuming the parties do not extend this time period, a final decision on the request to modify normally will be made within sixty days of delivery of the initial award.

The second provision we must examine is CPLR 7511. Subdivision (a) provides that "[a]n application [to the court] to vacate or modify an award may be made by a party within ninety days after its delivery to him." As noted, Subdivision (c) lists the grounds for seeking modification, which are the same whether a party requests modification by the arbitrator or the court.

Litho contends that its application to the arbitrators under CPLR 7509 to modify the award rendered the arbitrators' decision non-final, and that the ninety day period for vacating the award accrued on September 6, the date on which the arbitrators denied Litho's request to modify. The CPLR itself is unclear on this issue, and the New York courts have not directly addressed it. Nevertheless, we believe that, were this issue presented to the courts of New York, they would adopt Litho's construction of the two provisions in question.

The district court recognized that at least one New York court has found a petition to vacate an arbitration award timely under CPLR 7511(a) if it is filed within ninety days of the arbitrator's issuance of a supplemental award. *See Cady v. Aetna Life & Casualty Co.,* 113 Misc.2d 1080, 1084, 450 N.Y.S.2d 679, 682 (Sup.Ct.1982), *aff'd as modified on other grounds,* 96 A.D.2d 967, 466 N.Y.S.2d 850 (3d Dep't 1983), *aff'd,* 61 N.Y.2d 594, 463 N.E.2d 1214, 475 N.Y.S.2d 362 (1984). The district court reasoned, however, that "[t]here is a significant distinction ... between receipt of a supplemental award and a mere negative disposition of an application to modify an arbitration award, as occurred here." Language in the *Cady* opinion offers some support for this view. The *Cady* Court suggested that, had the arbitrator denied the petitioner's request for clarification, the initial award would not have been rendered non-final by the application to modify: "While the safer practice would have

been for the petitioner to file an appeal before the expiration of the 90 days in addition to the request for clarification, fortunately for petitioner the Master Arbitrator did entertain the request [for reargument or clarification] and issued a Supplemental Award." *Id.* (citation omitted).[2]

*Cady* is of little help on the issue before us. In our view, *In re Belli*, 24 A.D.2d 72, 263 N.Y.S.2d 846 (1st Dep't 1965) (per curiam), a case that the parties did not bring to the district court's attention, provides the better analysis. In *Belli*, the Appellate Division, First Department held that the one year limitation on petitions to confirm arbitration awards (CPLR 7510) runs from the date that the arbitrators rule on an application to modify under CPLR 7509. *See id.* at 73, 263 N.Y.S.2d at 848. This rule applies even if the arbitrators deny the application to modify, as they did in this case. *See id.* The rationale underlying *Belli* is that, "[i]f, pursuant to CPLR 7509, the matter is again taken under consideration by the arbitrators, there is no way of knowing what the final award will be until they have announced their decision." *Id.* This rationale applies equally to petitions to vacate. Section 7509 of the CPLR was added to give an arbitrator the opportunity to correct or clarify his award, thereby relieving courts of "the burden of making such a correction or being compelled to invalidate the award." CPLR 7509 Legislative Studies and Reports Note. To hold that an application under CPLR 7509 does not render the arbitrator's award non-final for purposes of the statute of limitations would encourage parties either (1) to file a petition to vacate with the court at the same time that they apply to the arbitrator for modification, or (2) to seek modification in court pursuant to CPLR 7511(c) simultaneously with a petition to vacate, rather than submit the application for modification to the arbitrator. Either result would frustrate the legislative purpose underlying CPLR 7509.

■ The union offers several reasons why the ninety day limitations period should begin to run on the date of delivery of the award without regard to Litho's application to modify. None of these arguments warrants extended discussion. The union argues first that we should not look to the *Belli* decision for guidance because it is older than and conflicts with *Cady*. We reject this argument because, as noted, *Cady*'s holding is unclear and is not necessarily inconsistent with *Belli*. That *Belli* is still good law is apparent from references to it in recent New York case law. *See Poldenak v. Country–Wide Ins. Co.*, 153 A.D.2d 930, 932, 545 N.Y.S.2d 736, 738 (2d Dep't 1989) (citing *Belli* for proposition that "the arbitrator's award[ ] became final when the arbitrators themselves disposed of all considerations and objections, if any"), *appeal denied*, 75 N.Y.2d 705, 552 N.E.2d 176, 552 N.Y.S.2d 928 (1990). Local 261 also contends that Litho's application sought only insignificant changes, and therefore should not affect the finality of the arbitrators' award. This argument is unpersuasive because CPLR 7509 (by reference to CPLR 7511(c)) expressly contemplates that parties might seek only changes "not affecting the merits of the controversy." An exception for insignificant changes also would waste valuable judicial resources in an effort to discern whether the requested changes were clerical or substantive. Finally, the union argues that only New York's statute of limitations, not New York's rule as to accrual of the limitations period, should apply in this section 301 action. There is some authority outside of this Circuit for the proposition that a federal court may borrow a statute of limitations in a section 301 action without borrowing all of that statute's procedural requirements. *See American Postal Workers Union*, 823 F.2d at 476 (borrow-

---

**2.** *Cady* also is distinguishable because there is no indication in *Cady* that the petitioner's request for "clarification or reargument" was authorized by statute. In other words, the arbitrator in *Cady* apparently was not required to consider the petitioner's request, whereas arbitrators must address applications to modify under CPLR 7509. Thus, *Cady* might stand for the proposition that a request for reargument or clarification not authorized by statute does not extend the limitations period unless the arbitrator entertains the request and issues a supplemental award.

ing Arbitration Act's statute of limitations and noting that, since Arbitration Act did not directly apply, that statute's requirements regarding service of the motion to vacate did not apply). Nevertheless, we decline Local 261's invitation to ignore New York's accrual rule. To accept it would lead to inconsistent results in state and federal court and therefore encourage forum shopping when federal subject matter jurisdiction is present. In the normal case, application of New York's rule regarding accrual of the ninety day period would delay the proceeding by no more than sixty days, a period not violative of the federal policy of speedy resolution of labor-management arbitration. *Cf. Board of Regents v. Tomanio,* 446 U.S. 478, 483–92, 100 S.Ct. 1790, 1794–99, 64 L.Ed.2d 440 (1980) (New York's tolling rules not inconsistent with federal policy in action under 42 U.S.C. § 1983).

Therefore, we hold that Litho's ninety day period for seeking vacatur began to run on September 6. Litho's petition was timely because it was filed on October 26, well within the limitations period.

## CONCLUSION

The district court's judgment is vacated and the matter remanded for consideration of the merits of appellants' petition.