07-4514-cv, -4647-cv
P.C. v. Dupont

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2008

(Argued:  January 16, 2009
 Final submissions:  March 13, 2009      Decided: May 6, 2009)

Docket Nos. 07-4514-cv, -4647-cv

_____

DURANT, NICHOLS, HOUSTON, HODGSON, & CORTESE-COSTA, P.C.,

                              Plaintiff-Appellee-
                              Cross-Appellant,

                    - v. -

RALPH P. DUPONT,

                              Defendant-Appellant-
                              Cross-Appellee.
_____

Before: JACOBS, Chief Judge, KEARSE and HALL, Circuit Judges.

Appeal and cross-appeal from a judgment of the United States District Court for the District of Connecticut, Janet B. Arterton, Judge, confirming an arbitration award in favor of plaintiff but denying plaintiff prejudgment interest and sanctions.

Appeals dismissed; matter remanded for determination of subject matter jurisdiction.

                    LORAINE M. CORTESE-COSTA, Bridgeport,
                         Connecticut (Michel Bayonne, Durant,
                         Nichols, Houston, Hodgson & Cortese-
                         Costa, Bridgeport, Connecticut, on the

brief), for Plaintiff-Appellee-Cross-Appellant.

WILLIAM H. CLENDENEN, Jr., New Haven, Connecticut (Nancy L. Walker, Clendenen & Shea, New Haven, Connecticut, Barbara J. Radlauer, Ralph P. Dupont pro se, The Dupont Law Firm, Stamford, Connecticut, on the brief), for Defendant-Appellant-Cross-Appellee.

KEARSE, Circuit Judge:

Defendant Ralph P. Dupont appeals from so much of a judgment entered in the United States District Court for the District of Connecticut, Janet B. Arterton, Judge, as confirmed an arbitration award ("Award") that ordered Dupont to pay $94,060.80 to plaintiff Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. ("Durant-Nichols"), based on agreements between the parties. Durant-Nichols cross-appeals from so much of the judgment as denied its requests for prejudgment interest on the amount awarded and for sanctions pursuant to 28 U.S.C. § 1927. At oral argument of this appeal, this Court sua sponte raised the issue of federal subject matter jurisdiction, noting that the appellate briefs do not contain adequate jurisdictional statements and that the complaint initiating this action failed to allege any basis for federal jurisdiction. We have now received additional submissions from the parties, which reveal that the existence of federal jurisdiction cannot be determined without the resolution of factual issues. Accordingly, we dismiss the appeals as premature and remand to the district court for findings of fact as to the existence of subject matter jurisdiction.

- 2 -

# I.    BACKGROUND

Durant-Nichols is a law firm.  Dupont is an attorney who entered into successive "Of Counsel Agreement[s]" with predecessors of Durant-Nichols in 1992 and 1996.  Dupont terminated the 1996 agreement in January 1997.  The present dispute concerns the claim of Durant-Nichols that it is entitled to a portion of the approximately $2.75 million in fees collected by Dupont in 2003 with respect to his work on law suits begun in 1998 with respect to the hijacking of a Kuwait Airways airplane; the 1998 suits were related to two contingent-fee actions--arising out of that same hijacking--which had been commenced by Dupont in 1985 and were pending while Dupont was of counsel to Durant-Nichols.  In August 2003, Durant-Nichols requested a share of the fees collected by Dupont.  Dupont did not respond.

## A.   Durant-Nichols's First Action

Both of the Of Counsel Agreements between Dupont and Durant-Nichols provided that any controversy or claim

> arising out of, or relating to any provision of this Agreement or the breach thereof, shall be settled by mediation with the aid of a mediator who is mutually acceptable to the parties or by arbitration in Bridgeport, Connecticut.  It is agreed that any party to any award rendered in any such arbitration proceeding may seek a judgment upon the award, and that such judgment may be entered thereon by the court having jurisdiction.

In the summer of 2004, Durant-Nichols commenced an action in

Connecticut Superior Court seeking an order compelling Dupont to submit to arbitration ("Durant-Nichols I").

Dupont removed Durant-Nichols I to federal district court, premising federal jurisdiction on diversity of citizenship. Citing 28 U.S.C. § 1332, his notice of removal ("Removal Notice") stated that Durant-Nichols "is a Connecticut professional corporation whose only office is in Connecticut," that Dupont "is a citizen and resident of the State of Hawaii," and that the "amount in controversy, exclusive of interest and costs, exceeds $75,000.00." (Dupont's Removal Notice dated July 7, 2004, ¶¶ 4-7.) In addition, Dupont asserted that the case involved a claim for arbitration under the Federal Arbitration Act ("FAA" or the "Act") and that the district court had jurisdiction under 28 U.S.C. § 1331, which confers jurisdiction over cases raising a federal question. (See Dupont's Removal Notice ¶¶ 8-9.) Because Dupont contended that he had not been properly served with the complaint and summons, Durant-Nichols voluntarily dismissed Durant-Nichols I and began the present action.

B.  The Present Action

Durant-Nichols commenced its present action in the district court on August 16, 2004 ("Durant-Nichols II"), again seeking an order compelling arbitration. The complaint alleges that Durant-Nichols "is a professional corporation engaged in the rendering of legal services and whose office is located" in Connecticut, and that Dupont is an attorney "doing business" in

- 4 -

Connecticut. (Complaint ¶¶ 1-2.) However, the complaint contains neither a sufficient allegation of Durant-Nichols's citizenship within the meaning of 28 U.S.C. § 1332(c) (for purposes of diversity jurisdiction, a corporation is deemed to be a citizen of both the state of its incorporation and the state where it has its principal place of business), nor any allegation as to Dupont's citizenship. Nor is there any other allegation as to a basis for federal court jurisdiction.

Dupont defaulted in response to the Durant-Nichols II complaint, failing to appear or respond. Durant-Nichols moved successfully for a default order compelling arbitration.

On November 19, 2004, Dupont, proceeding pro se, moved pursuant to Fed. R. Civ. P. 60(b) to vacate the default. Stating that "he is a citizen and resident of the State of Hawaii and has been for several years" (Dupont Memorandum of Law in Support of Motion To Open Default Judgment, dated November 17, 2004 ("Dupont Vacatur Motion Memorandum") at 3), Dupont asserted, inter alia, that he was not properly served with the Durant-Nichols II papers, that they had been improperly left on the ground at a dwelling (at which he was present) in Pound Ridge, New York, on the night of September 29, 2004 (see Affidavit of Ralph P. Dupont dated November 17, 2004 ("2004 Affidavit"), ¶¶ 2-4), and that he had subsequently lost the papers (see id. ¶¶ 7-8, 11; Dupont Vacatur Motion Memorandum at 3). In a reply memorandum dated December 23, 2004 ("Dupont Vacatur Reply Memorandum"), while reiterating that he "is a citizen and resident of the State of Hawaii" (Dupont

- 5 -

Vacatur Reply Memorandum at 3, 17), Dupont added the contention that "the Court has no subject matter jurisdiction over this action under the Federal Arbitration Act, 9 U.S.C. § 1, et seq. because the matters [Durant-Nichols] seeks to arbitrate pursuant to the parties [sic] are nonarbitrable." (Dupont Vacatur Reply Memorandum at 35).

The district court denied Dupont's motion to vacate the default judgment, finding that Dupont had failed to demonstrate excusable neglect or improper service, and implicitly rejecting his arbitrability-based challenge to subject matter jurisdiction. In an appeal that was timely as to the order denying Dupont's Rule 60(b) motion but not as to the underlying order of default (the "2005 Appeal"), Dupont challenged the district court's rejections of his contentions that his default was excusable, that he was not properly served, and that the matters as to which arbitration was sought were "not . . . within the scope of the FAA" (Dupont's brief in 2005 Appeal at 1-2). In addition, Dupont made a new attack on federal subject matter jurisdiction on the ground that the amount in controversy was less than $75,000. He stated that "the basis for jurisdiction is presumably[] diversity, 28 U.S.C. § 1332, because the Defendant is a citizen of Hawaii" (Dupont's brief in 2005 Appeal at 39; see also id. at 26 ("[Dupont] is a citizen of Hawaii, with a home at 6770 Hawaii Kai Drive, Honolulu. . . . For brief periods of time, and from time to time, Attorney Dupont is present at 14 Peters Lane, Pound Ridge, New York, a short distance from his Stamford[, Connecticut] law

- 6 -

office.")); but he argued that "the jurisdictional amount cannot be satisfied" (id. at 39 (emphasis added)). This Court rejected all of Dupont's contentions and affirmed the district court's denial of his motion to vacate the default.

The parties proceeded to arbitration, and the arbitrator ruled in favor of Durant-Nichols, awarding it $94,060.80. Durant-Nichols moved to confirm the Award; Dupont moved to vacate it. The district court granted the motion to confirm, describing the action as a "28 U.S.C. § 1331 federal question fee dispute" that the court had "ordered to be arbitrated . . . under the Federal Arbitration Act, 9 U.S.C. § 1, et seq." Ruling on Plaintiff's Motion To Confirm Arbitration Award, dated September 13, 2007 ("Confirmation Order"), at 1. Although Durant-Nichols also moved for prejudgment interest and the imposition of sanctions against Dupont, the district court denied those motions.

Dupont has appealed the judgment confirming the Award, and Durant-Nichols has cross-appealed the denial of its motions for prejudgment interest and sanctions. At oral argument of these appeals, this Court pointed out that the FAA does not confer federal jurisdiction and that Durant-Nichols's complaint contained no adequate allegation of diversity jurisdiction; we asked whether there was evidence in the record to show that diversity jurisdiction existed. Both sides conceded that diversity had never been properly pleaded, and they proceeded to submit additional papers.

C.  <u>The Post-Oral-Argument Submissions on this Appeal</u>

Following oral argument, Durant-Nichols moved to amend its complaint pursuant to 28 U.S.C. § 1653 (authorizing the courts to permit amendment of "[d]efective allegations" of jurisdiction), in order to make proper allegations as to the diverse citizenship of the parties and the amount in controversy. (<u>See</u> Durant-Nichols Motion To Amend Pleadings dated January 27, 2009 ("Motion To Amend"), at 1.) In support of its motion, Durant-Nichols stated, <u>inter alia</u>, that it is, and always has been, a Connecticut corporation (<u>see</u> Affidavit of Loraine M. Cortese-Costa sworn to January 26, 2009, ¶ 3); that it has a single office, which is in Bridgeport, Connecticut (<u>see</u> <u>id</u>.); and that on both July 7, 2004, and November 17, 2004--<u>i.e.</u>, shortly before and shortly after the August 16, 2004 commencement of this action--Dupont stated that he was a citizen of Hawaii, and on November 17, 2004, stated that he had been a citizen of Hawaii for several years (<u>see</u> <u>id</u>. ¶¶ 2, 5). Durant-Nichols also stated that it was seeking confirmation of an Award of more than $94,000, that Dupont sought to have the Award vacated, and thus that the amount in controversy is in excess of $75,000. (<u>See</u> Motion To Amend at 3-4).

Dupont opposed Durant-Nichols's motion to amend the complaint, arguing that § 1653 does not authorize such an amendment because the complaint did not contain "defective" jurisdictional allegations but rather contained "<u>no</u> allegations of jurisdiction" (Dupont Response in Opposition to Motion To Amend Pleadings Under § 1653, dated February 3, 2009, at 2 (emphasis in

- 8 -

original).)  He argued that "[n]othing in the Complaint's allegations sets out either the domicile of the parties or the requisite amount in controversy, and therefore subject matter jurisdiction based on diversity is not available." (Id. at 3.) He asserted that "there are no jurisdictional facts anywhere in the record that unequivocally establish [Dupont's] domicile as of August 13 [sic], 2004, the date the complaint was filed . . . ." (Id.)

By order dated February 4, 2009, this Court ordered Dupont to file a statement under oath "disclosing the State of which he was a citizen on the date the present action was commenced." Dupont responded with an affidavit, stating, inter alia, that "[o]n August 16, 2004, the date this action was commenced, I believe I was still domiciled in Connecticut and had not changed my domicile to Hawaii or New York" (Affidavit of Ralph P. Dupont dated February 12, 2009 ("Dupont 2009 Aff."), ¶ 1), and that "[a]lthough at various times from 2001 through early 2005, I considered moving permanently to Hawaii, my work, my family and other circumstances always drew me back to my Connecticut law practice, and I never formed a final fixed intention to reside permanently in Hawaii" (id. ¶ 19). Dupont stated that he owned real property in Connecticut "as a partner in two Connecticut partnerships." (Id. ¶ 7.) As to his residences, Dupont stated as follows:

> 2. From 1957 until the early summer of 2001, I lived exclusively in New London, Stonington and Mystic, Connecticut, except for vacations and for

brief periods of time in 1977-1978 and 1992-1994, when I taught at law schools in Massachusetts.

3. Except for the time when I taught in Massachusetts, I have practiced law and/or taught law in Connecticut from 1957 through the present. At all times from 1957 through the present, I have practiced law at offices in the State of Connecticut. . . . I have never practiced law in any other state except for a brief period in 1956-57, when I was an associate in a New York City law firm. I have no current plans to retire from my Connecticut practice.

4. Since 2001 through the present, I have lived in the following places at approximately the following times:

a. From January through late spring of 2001, I lived in Mystic, CT.

b. From the early summer 2001 through December 2001, I resided in various rented, furnished homes or apartments on the Hawaiian Islands of Kauai, Oahu and Molokai. At the end of 2001, I left Hawaii and returned to Connecticut.

c. From early 2002 through early 2003, I lived in rented, furnished homes in Guilford, and Mystic, Connecticut.

d. In early 2003 through the late spring of 2003, I lived in various rented, furnished homes and hotels on the Islands of Molokai and Oahu in Hawaii.

e. From the late spring through the end of 2003, I lived at 14 Peter's Lane, Pound Ridge, New York in a home owned and furnished by my wife. During this period, I traveled periodically to Hawaii and stayed in the home I rented on Molokai.

f. From January through December 2004, I lived periodically in Pound Ridge, New York, and periodically in a rented, furnished apartment on Hawaii Kai Drive in Honolulu, Hawaii (on the Island of Oahu).

5. At all times during the periods described in paragraph 4, I continued to work at my Connecticut law offices whenever I was living in either

- 10 -

Connecticut or Pound Ridge, New York. When I was living in Hawaii, I continued to work with and through my Connecticut law office by communicating almost daily with my staff there.

6. I was living at 14 Peter's Lane in Pound Ridge, New York, and working at my Stamford, Connecticut law office both when this action was commenced on August 16, 2004, and in October [sic] 2004, when the defendant attempted to serve process on me in this action. During this same period, I also continued to rent the Hawaii Kai apartment.

(Dupont 2009 Aff. ¶¶ 2-6.)

Dupont stated that at the time he filed his November 17, 2004 affidavit, proposed answer to the complaint, and memorandum stating that he was a citizen of Hawaii (and had been for several years), he "did not analyze the various elements that comprise citizenship, and [he] did not have domicile in mind." (Id. ¶ 13.)

## II. DISCUSSION

"It is a fundamental precept that federal courts are courts of limited jurisdiction" and lack the power to disregard such limits as have been imposed by the Constitution or Congress. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action sua sponte. See, e.g., Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 152 (1908).

Although the district court's Confirmation Order in the present case described this action as raising a federal question under the Federal Arbitration Act, 9 U.S.C. § 1 et seq., that Act

- 11 -

in fact does not independently confer subject matter jurisdiction on the federal courts. See, e.g., Perpetual Securities, Inc. v. Tang, 290 F.3d 132, 136 (2d Cir. 2002); see generally Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 25 n.32 (1983) ("The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 . . . or otherwise."). Thus, "[t]here must be an independent basis of jurisdiction before a district court may entertain petitions under the Act." Harry Hoffman Printing, Inc. v. Graphic Communications, International Union, Local 261, 912 F.2d 608, 611 (2d Cir. 1990). Accordingly, it must be determined whether at the time the present action was commenced there was diversity jurisdiction, that is, whether Dupont was a citizen of--i.e., domiciled in, see, e.g., Gilbert v. David, 235 U.S. 561, 569 (1915); Linardos v. Fortuna, 157 F.3d 945, 948 (2d Cir. 1998)--a state other than the state in which Durant-Nichols was incorporated and the state in which it had its principal place of business, see 28 U.S.C. § 1332(c)(1), and whether the amount in controversy "exceeds . . . $75,000, exclusive of interest and costs," id. § 1332(a).

Durant-Nichols suggests that the issue of subject matter jurisdiction in this case has already been resolved, stating that "this Court specifically considered and accepted the district

- 12 -

court's exercise of subject matter jurisdiction in its decision on the [2005] appeal" (Durant-Nichols's reply memorandum in support of its Motion To Amend at 1), as our summary order disposing of that appeal "state[d] that '[w]e find no error in the district court's disposition of Dupont's challenge to its subject matter jurisdiction over the underlying action'" (Durant-Nichols's Motion To Amend at 3). This suggestion, however, ignores the nature of the jurisdictional challenges that had been made by Dupont, both in the district court and in this Court. The jurisdictional contentions we rejected in the 2005 Appeal were, as described in Part I.B. above, (a) Dupont's argument in the district court that there was no federal question jurisdiction because the dispute was not arbitrable--an argument that the district court denied sub silentio, making no statement as to any ground of subject matter jurisdiction--and (b) Dupont's new argument in this Court that there was no diversity jurisdiction because the amount in controversy was below the requisite jurisdictional amount. The question we have raised in the present appeal, in contrast, is whether the parties were citizens of different states. During the 2005 appeal, no party raised that question; and indeed that issue was masked, as Dupont repeatedly stated that he "is a citizen of Hawaii" (Dupont's brief in 2005 Appeal at 26, 39) and referred to his "conceded Hawaii citizenship" (id. at 17; see also id. at 2 ("It is conceded that [Dupont] is a non-resident of Connecticut.")).

- 13 -

Notwithstanding any prior proceedings, it is our obligation to raise the matter of subject matter jurisdiction "whenever it appears from the pleadings or otherwise that jurisdiction is lacking." John Birch Society v. National Broadcasting Co., 377 F.2d 194, 199 (2d Cir. 1967) (emphasis added); see, e.g., Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." (emphasis added)). Accordingly, because the complaint contains no allegation as to Durant-Nichols's state of incorporation or as to Dupont's citizenship, we raised the question of diversity at oral argument of these appeals.

Although a plaintiff premising federal jurisdiction on diversity of citizenship is required to include in its complaint adequate allegations to show that the district court has subject matter jurisdiction, see, e.g., Fed. R. Civ. P. 8(a)(1), its failure to do so does not always require that the action be dismissed, for "the actual existence of diversity jurisdiction, ab initio, does not depend on the complaint's compliance with these procedural requirements." Jacobs v. Patent Enforcement Fund, Inc., 230 F.3d 565, 568 (2d Cir. 2000) (emphasis in original). Thus, "where the facts necessary to the establishment of diversity jurisdiction are subsequently determined to have obtained all along, a federal court may . . . allow a complaint to be amended to assert those necessary facts," Herrick Co., Inc. v. SCS Communications, Inc., 251 F.3d 315, 329 (2d Cir. 2001); see, e.g.,

28 U.S.C. § 1653 ("[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts"). Or, when the record as a whole, as supplemented, establishes the existence of the requisite diversity of citizenship between the parties, we may simply "deem the pleadings amended so as to properly allege diversity jurisdiction." Canedy v. Liberty Mutual Insurance Co., 126 F.3d 100, 103 (2d Cir. 1997) (holding diversity established in light of affidavits submitted to this Court, where "the affidavits [we]re contested by neither party, and there [wa]s nothing in the record to suggest lack of jurisdiction"); see, e.g., Jacobs v. Patent Enforcement Fund, Inc., 230 F.3d at 567-68 (upholding default judgment despite the complaint's failure to allege the parties' citizenship, rather than merely their residence, where supplementation of the record before this Court revealed diversity of citizenship).

As described in Part I.C. above, Durant-Nichols has now submitted--in support of its postargument motion to amend its complaint--an affidavit stating that it is incorporated in, and has its principal place of business in, Connecticut. Dupont does not dispute these assertions; and as nothing in the record appears to contradict them, we regard the record as sufficient to establish that Durant-Nichols is, for diversity purposes, a citizen only of Connecticut. Moreover, given that Durant-Nichols sought arbitration to obtain a share of Dupont's $2.75 million fee and was awarded more than $94,000, there is no question that the

amount-in-controversy requirement is satisfied. Dupont has not renewed the contrary contention he advanced in the 2005 Appeal.

As to the citizenship of Dupont, however, the parties' submissions are in conflict. Durant-Nichols, which, as the plaintiff, has the burden of proving subject matter jurisdiction, seeks to amend its complaint to allege that Dupont is a citizen of Hawaii. Its motion points out that Dupont stated many times that he was a citizen of Hawaii, making that assertion both shortly before and shortly after the present action was commenced. Dupont, however, in response to this Court's order that he declare under oath the state of his citizenship at the time this action was commenced, has submitted an affidavit stating, "[o]n August 16, 2004, the date this action was commenced, I believe I was still domiciled in Connecticut and had not changed my domicile to Hawaii or New York" (Dupont 2009 Aff. ¶ 1). As quoted at length in Part I.C. above, Dupont sought to support this professed belief by describing, <u>inter alia</u>, the various places he lived from 2001 through 2004--Hawaii and Connecticut in 2001-2003, and Hawaii and New York in 2003-2004 (<u>see</u> <u>id</u>. ¶¶ 4-6)--and his membership in two partnerships that owned real property in Connecticut (<u>see</u> <u>id</u>. ¶ 7).

In addition, Dupont described the location of his books and research papers (<u>see</u> <u>id</u>. ¶ 18 (Connecticut)); the location of his bank accounts (<u>see</u> <u>id</u>. ¶ 8 (Connecticut, New York, and Hawaii)); the states in which he has had driver's licenses (<u>see</u> <u>id</u>. ¶ 11 (Connecticut until May 2003; since May 2003, Hawaii));

- 16 -

where he voted (see id. ¶ 10 (Connecticut "before 2004"; New York in 2008; no votes in Hawaii)); and where he filed his tax returns (see id. ¶ 17 ("non-resident Connecticut and New York income tax returns for 2003 and 2004"; "resident Hawaii income tax returns in 2003 and 2004")).

Dupont also stated that, in repeatedly saying that he was a citizen of Hawaii, he "did not have domicile in mind" (Dupont 2009 Aff. ¶ 13)--this despite the fact that, as discussed in Parts I.A. and B. above, several of his claims of Hawaiian citizenship were made in the course of discussing diversity jurisdiction or, indeed, in support of his own invocation of diversity jurisdiction when he removed Durant-Nichols I to federal court. (When the jurisdictional issue is neglected until after a decision has been rendered on the merits, agreement as to the facts of diversity sometimes becomes harder to achieve.)

As we will "generally afford an opportunity for amendment" of the pleadings to cure defective jurisdictional allegations unless "the record clearly indicates that the complaint could not be saved by any truthful amendment," Canedy v. Liberty Mutual Insurance Co., 126 F.3d at 103, and as Dupont himself has provided Durant-Nichols with ample basis for believing that Dupont was a citizen of Hawaii on August 16, 2004, given his claims that he was a Hawaiian citizen on, inter alia, July 7, 2004 (see Dupont's Removal Notice in Durant-Nichols I), and November 17, 2004 (see Dupont's 2004 Affidavit and his Vacatur Motion Memorandum in Durant-Nichols II, and his proposed answer to the Durant-

- 17 -

Nichols II complaint if his motion to vacate the default were successful), we grant Durant-Nichols's motion to amend its complaint.

However, Dupont's 2009 Affidavit expressly denies that he was a citizen of Hawaii for purposes of diversity jurisdiction in the present action. Although revealing, *inter alia*, that he had not lived in Connecticut since early 2003, and that he thereafter lived in Hawaii in rented homes and in New York with his wife in the home she owned, Dupont states that he believes he was still domiciled in Connecticut in August 2004 and had not changed his domicile to Hawaii or New York. Accordingly, the factual issue as to where Dupont was domiciled on August 16, 2004, remains to be resolved. We therefore remand this matter to the district court to supplement the record with factual findings on that issue.

CONCLUSION

For the reasons discussed above, we grant Durant-Nichols's motion to amend the complaint to allege that Durant-Nichols is incorporated in Connecticut and has its principal place of business in Connecticut, that Dupont was a citizen of Hawaii as of the time of commencement of this action, and that the amount in controversy, exclusive of interest and costs, exceeds $75,000. We deem Dupont's answer to have been amended to deny the allegation that he was a citizen of Hawaii. In light of the factual dispute as to where Dupont was domiciled on August 16, 2004, and hence as

- 18 -

to whether the district court had subject matter jurisdiction of the action, we dismiss the appeal and cross-appeal as premature, and we remand to the district court for supplementation of the record with findings as to the citizenship of Dupont, for diversity purposes, at the time this action was commenced.

In allowing Durant-Nichols to amend its complaint to allege that Dupont was a citizen of Hawaii, and remanding to the district court for factual findings, we do not mean to imply that the district court could not find that, at the time this action was commenced, Dupont's domicile was in fact New York, where he lived with his wife in the home owned by her.

If the district court determines that it has diversity jurisdiction, i.e., that Dupont was domiciled in Hawaii or New York when the action was commenced, the present appeals will be reinstated--without need for new notices of appeal--upon notice, by either party to this Court by letter within 14 days after such determination, that the district court has supplemented the record with jurisdictional findings. In that event, the parties may file supplemental briefs, not to exceed 10 double-spaced pages, on the jurisdictional decision and any intervening authorities concerning the merits, according to a schedule to be established by this Court's Staff Counsel.

In the event that the district court determines that it lacks diversity jurisdiction and dismisses the action, a new notice or notices of appeal will be required in order to obtain appellate review.

In either event, the matter shall be referred to this panel.

The mandate shall issue forthwith.  No costs.