PERPETUAL SECURITIES, INC.,
Petitioner–Appellant,

v.

Julie TANG and Hua Yu Chen,
Respondents–Appellees.

Docket No. 01–7901.

United States Court of Appeals,
Second Circuit.

Argued March 26, 2002.

Decided May 9, 2002.

134

Kevin K. Tung, Flushing, NY, for Appellant.

Michael Schneider, New York City, for Appellees.

Before: OAKES, MESKILL and SACK, Circuit Judges.

MESKILL, Circuit Judge.

Petitioner-appellant Perpetual Securities, Inc. (Perpetual) appeals from a judgment and order of the United States District Court for the Southern District of New York, Owen, *J.*, denying Perpetual's petition to vacate an arbitration award, granting respondents-appellees' petition for confirmation of the award, and granting Rule 11 sanctions against Perpetual in the form of attorney's fees and costs.

The district court determined that because Perpetual had not raised an indepen-

dent ground of federal jurisdiction in its complaint, the court was without jurisdiction to vacate the arbitration award. After determining, however, that the Federal Arbitration Act conferred upon it jurisdiction to *confirm* an arbitration award, the district court confirmed the award in this case. Further, because Perpetual's arguments attempting to raise a federal question were clearly against Circuit precedent, the district court awarded Rule 11 sanctions in the form of reasonable attorney's fees and costs against Perpetual.

We hold that the district court correctly determined that it lacked jurisdiction to vacate the arbitration award, but that the district court erred in assuming jurisdiction to confirm the arbitration award. Further, we hold that the district court's award of Rule 11 sanctions in the form of attorney's fees against Perpetual was improper. Accordingly, we vacate the order of the district court and remand the case to be dismissed for lack of subject matter jurisdiction and so that the district court can reconsider the sanctions issue.

## BACKGROUND

Respondents-appellees Julie Tang and Hua Yu Chen brought a claim before a National Association of Securities Dealers (NASD) arbitration panel against Perpetual for unauthorized trading in an account maintained by appellees at Perpetual. The claim was brought before the arbitration panel pursuant to the Margin and Option Agreements (Agreements) signed by appellees. The arbitration provision in the Margin Agreement, which is essentially identical to the provision in the Option Agreement, provides that "all controversies which may arise between us … shall be determined by arbitration. Any arbitration under this agreement shall be conducted before the New York Stock Exchange, Inc. ('NYSE') or the National

Association of Securities Dealers, Inc. ('NASD')." The Agreements further stated "[j]udgement upon the award of arbitrators may be entered in any court, state or federal, having jurisdiction."

The complaint before the arbitration panel alleged, *inter alia,* that Yue Chen, an employee of Perpetual, refused to stop trading on appellees' account despite appellees' request. NASD Regulation performed an investigation to determine whether disciplinary action should be taken against Yue Chen and determined that no action would be taken at that time. Perpetual then moved for a dismissal of the case before the arbitration panel, asserting *res judicata* and collateral estoppel claims. Perpetual argued that appellees' claims were based on the conduct of Yue Chen. Because NASD Regulation had determined that no disciplinary action would be taken against Yue Chen, Perpetual argued that NASD Regulation's decision should govern the case against Perpetual and Yue Chen before the arbitration panel. The panel rejected the argument and denied Perpetual's motion.

Following the hearing, Perpetual was ordered to pay $21,000 to appellees in compensatory damages, $5,000 to NASD Dispute Resolution in forum fees, $105 in administrative costs and $3,100 in member fees.

Perpetual initiated an action in the United States District Court for the Southern District of New York seeking to vacate the arbitration award. Appellees cross-moved for dismissal of Perpetual's petition, confirmation of the arbitration award and the imposition of sanctions pursuant to Fed. R.Civ.P. 11. The district court concluded that it lacked jurisdiction to vacate the arbitration award because Perpetual had failed to present an independent basis for subject matter jurisdiction. *Perpetual Sec. v. Tang,* 2001 WL 826121, at *1

(S.D.N.Y. July 20, 2001). The district court then concluded that it had jurisdiction to confirm the arbitration award and did so. The district court also awarded Rule 11 sanctions against Perpetual in the form of attorney's fees and costs. *Id.* This appeal followed.

## DISCUSSION

We have jurisdiction to hear this appeal pursuant to 9 U.S.C. § 16(a)(1)(D) (an appeal may be taken from an order confirming or denying confirmation of an award). *See United States v. Corrick,* 298 U.S. 435, 440, 56 S.Ct. 829, 80 L.Ed. 1263 (1936) ("While the District Court lacked jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.").

### I. *Subject Matter Jurisdiction*

Federal courts are courts of limited jurisdiction. Congress has, pursuant to its authority under Article III of the Constitution, granted to district courts jurisdiction to hear cases in which there is a federal question and cases based on the diversity of citizenship of the parties. U.S. Const. art. III, § 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."); *id.* art. III, § 2 (delineating the limits of the "judicial Power"); 28 U.S.C. § 1331 (granting jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States"); *id.* § 1332 (granting jurisdiction "where the matter in controversy exceeds the sum or value of $75,000 . . . and is between[, *inter alia,*] citizens of different States").

Individual "parties cannot confer subject matter jurisdiction where the Constitution and Congress have not. The ab-

sence of such jurisdiction is non-waivable; before deciding any case we are required to assure ourselves that the case is properly within our subject matter jurisdiction." *Wynn v. AC Rochester,* 273 F.3d 153, 157 (2d Cir.2001) (per curiam) (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)).

### A.

Section 10 of the Federal Arbitration Act (FAA), 9 U.S.C. § 10, allowing federal district courts to vacate arbitration awards, does not confer upon federal district courts subject matter jurisdiction. *United States v. Am. Soc. of Composers, Authors & Publishers,* 32 F.3d 727, 731 (2d Cir.1994); *Harry Hoffman Printing v. Graphic Communications, Int'l Union, Local 261,* 912 F.2d 608, 611 (2d Cir.1990); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction."). "There must be an independent basis of jurisdiction before a district court may entertain petitions under the Act." *Harry Hoffman Printing,* 912 F.2d at 611.

There is no allegation that there is diversity jurisdiction; although the parties appear to be diverse, the amount in controversy is less than the statutorily required $75,000. 28 U.S.C. § 1332. Therefore, for subject matter jurisdiction to exist here, the dispute must raise a federal question. Perpetual recognized this by pleading jurisdiction under 28 U.S.C. § 1331 in its complaint.

■ "Federal question jurisdiction exists where a well-pleaded complaint 'establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a *substantial question of federal law.*'" *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 25 (2d. Cir.2000) (emphasis added) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). When deciding whether federal question jurisdiction exists, we must proceed prudently and make pragmatic distinctions between those allegations, if any, that raise substantial questions and those that do not. *Id.* at 26, 103 S.Ct. 2841 (citing *Barbara v. New York Stock Exch.*, 99 F.3d 49, 54 (2d Cir.1996)). In so doing, we examine "the nature of the federal question raised in [each] claim to see if it is sufficiently substantial to warrant federal jurisdiction." *Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 570 (2d Cir. 1995).

■ Simply raising a federal issue in a complaint will not automatically confer federal question jurisdiction. Rather, we ask "whether the cause of action alleged is *so patently without merit* as to justify … the court's dismissal for want of jurisdiction." *Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 70, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978) (quotation marks omitted); *accord Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974) (noting that federal jurisdiction existed because plaintiff's assertion that its claim was based in federal law was not "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court").

## B.

■ The gravamen of Perpetual's claim before the district court was that its due process rights under the Fifth and Fourteenth Amendments were violated because NASD requires its members to submit to compulsory arbitration of all disputes. In order for this argument to be colorable, Perpetual must show that NASD's conduct constituted state action; otherwise, there is no constitutional violation. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (private conduct is not subject to the requirements of the Fourteenth Amendment, no matter how discriminatory or wrongful); *Desiderio v. Nat'l Assoc. of Sec. Dealers*, 191 F.3d 198, 206 (2d Cir. 1999) ("A threshold requirement of plaintiff's [Fifth Amendment due process claim and other] constitutional claims is a demonstration that in denying plaintiff's constitutional rights, the defendant's conduct constituted state action." (citing *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir.1991))). Perpetual can meet this burden by showing that NASD is a state actor. *See Jackson*, 419 U.S. at 349, 95 S.Ct. 449. But even if NASD is a private actor, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (quoting *Jackson*, 419 U.S. at 351, 95 S.Ct. 449).

In *Desiderio*, when confronted with the specific question whether NASD was a state actor, we held:

The NASD is a private actor, not a state actor. It is a private corporation that receives no federal or state funding. Its creation was not mandated by statute,

nor does the government appoint its members or serve on any NASD board or committee. Moreover, the fact that a business entity is subject to "extensive and detailed" state regulation does not convert that organization's actions into those of the state.

191 F.3d at 206 (citing *Jackson*, 419 U.S. at 350, 95 S.Ct. 449). This conclusion was repeated in our recent decision in *D.L. Cromwell Invs. v. NASD Regulation*, 279 F.3d 155, 161–63 (2d Cir.2002). In *Desiderio* we thoroughly analyzed whether a compulsory arbitration clause constituted state action despite NASD's status as a private actor. We held that "[t]he SEC's mere approval of [compulsory arbitration] is not sufficient to justify holding the state liable for the effects of the arbitration clause." *Desiderio*, 191 F.3d at 207 (quotation marks omitted). Although the context of the arbitration clause at issue in *Desiderio* differs from the context of the arbitration clause at issue here, Perpetual has not alleged that the SEC required or even encouraged NASD or any other self-regulating private organization to adopt compulsory arbitration.

It is clear that NASD is not a state actor and its requirement of mandatory arbitration is not state action. Perpetual cited *Desiderio* in its brief before the district court and on appeal and does not attempt to distinguish it; it simply asserts that NASD is a state actor. In support of this bald assertion, Perpetual cites *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995). *Lebron* is clearly distinguishable; Amtrak, the corporation at issue in *Lebron*, was created by the government "by special law for the furtherance of government objectives," and the government "retain[ed] for itself permanent authority to appoint a majority of the directors of" Amtrak. *Id.* at 400, 115 S.Ct. 961. There is no commonality between NASD and Amtrak.

In its brief, Perpetual also encourages this Court to employ a new test when determining whether a private corporation is a "state actor" for purposes of the Constitution. In the case at hand, the application of the test would require us to ask whether, in NASD's absence, the government would need to take over the role of regulator of NASD's member companies. Perpetual's proposed test is contrary to the analysis required by the Supreme Court in *Lebron* and the other cases Perpetual cites for support:

> First, . . . [t]he complaining party must . . . show[, in addition to the fact that the entity is regulated by the state,] that there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. . . .

> Second, . . . a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State. . . .

> Third, the required nexus may be present if the private entity has exercised powers that are traditionally the exclusive prerogative of the State.

*Blum v. Yaretsky*, 457 U.S. 991, 1004–05, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (quotation marks and citations omitted); *see Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (private use of challenged government procedures with the help of government officials constitutes state action). We decline to ignore such clear direction from the Supreme Court in favor of Perpetual's proposed test.

■ Given the clear and unambiguous precedent in this Circuit holding that

NASD is a private actor and that the adoption of compulsory arbitration by it does not constitute state action, the district court did not err in determining that Perpetual's due process argument failed to confer jurisdiction over Perpetual's action to vacate the arbitration award. *See Duke Power*, 438 U.S. at 70, 98 S.Ct. 2620 ("[T]he test is whether the cause of action alleged is *so patently without merit* as to justify . . . the court's dismissal for want of jurisdiction." (quotation marks omitted)). Because NASD is a private actor and because there is no nexus between its challenged action (compulsory arbitration) and the state, Perpetual's claim of a due process violation is patently without merit.

### C.

We have intimated that an allegation that an arbitration panel manifestly disregarded federal law will give rise to federal question jurisdiction. *See Greenberg*, 220 F.3d at 27. In its complaint, Perpetual alleged that the arbitration panel "manifestly disregarded . . . the legal principle[s] of Collateral Estoppel and Res Judicata" and "manifestly disregarded . . . the law of tort whereby awarding [appellees'] compensatory damages without grounds." It is clear that Perpetual's allegations cannot be the basis for subject matter jurisdiction.

#### 1. *Collateral Estoppel and Res Judicata*

Perpetual's collateral estoppel and *res judicata* arguments are completely without merit. The decision by NASD Regulation not to seek disciplinary action against Yue Chen has no relevance whatsoever to the arbitration panel's decision.

▪ Collateral estoppel, or issue preclusion, is not applicable here. That NASD Regulation decided not to take disciplinary action against Yue Chen has no bearing on whether Yue Chen or Perpetual are financially liable to appellees for their misconduct; the issue of their financial liability was not considered or decided by NASD Regulation. *See Murphy v. Gallagher*, 761 F.2d 878, 879 (2d Cir.1985) ("Issue preclusion refers to the preclusive effect of a judgment that prevents a party from litigating a second time an issue of fact or law *that has once been decided.*" (emphasis added)).

▪ Similarly, *res judicata*, or claim preclusion, is not applicable for three reasons: (1) NASD Regulation is not an entity with jurisdiction to decide the issue before the arbitration panel; (2) appellees were not a party to NASD's investigation of Yue Chen; and (3) the issue decided by NASD's investigation was wholly different from the issue to be decided by the arbitration panel. *See id.* ("Under the doctrine of claim preclusion a judgment, *once rendered by a court of competent jurisdiction*, will be treated thereafter as the full measure of relief to be accorded *between the same parties on the same . . . cause of action.*" (emphasis added) (quotation marks omitted)). Perpetual assumes that because NASD Regulation investigated Yue Chen on the basis of appellees' allegations, appellees were somehow "parties" to that investigation. It is clear that is not the case.[1]

#### 2. *Respondeat Superior*

▪ Perpetual also argues that the arbitration panel manifestly disregarded tort

1. We note that despite its decision not to take disciplinary action against Yue Chen, NASD Regulation specifically stated that its decision was made "in the exercise of its regulatory discretion, and is not intended to nor should it be construed as a reflection of the accuracy of" appellees' allegations.

law—specifically the tort law concept of *respondeat superior.* The gravamen of Perpetual's claim is that, under the doctrine of *respondeat superior,* the panel could not have found Perpetual liable without first finding Yue Chen liable. Since the panel did not find Yue Chen liable, Perpetual argues that the panel must have erred in finding Perpetual liable.

As an initial matter, there is no allegation by Perpetual that *respondeat superior* is an issue of federal law that needs to be decided by a federal court. *Cf. Greenberg,* 220 F.3d at 27. Second, there is little or no evidence that the arbitrators did indeed disregard such a principle. The arbitrators could have found for appellees even absent a finding of *respondeat superior.* As the district court pointed out in its Memorandum and Order, "the arbitrator[s] may have concluded that there was negligent supervision of the employee and thus imposed an award on the brokerage house but not the individual broker." *Perpetual Sec.,* 2001 WL 826121, at *1 n. 3. The language in *Duke Power* and *Oneida Indian Nation* makes evident that Perpetual's *respondeat superior* claim does not raise a substantial federal question.

### D.

■ Although the district court was correct in determining that it lacked jurisdiction over Perpetual's claim to vacate the arbitration award, it erred in determining that section 9 of the FAA conferred jurisdiction to the district court to *confirm* an arbitration award. As noted above, the FAA creates a substantive body of law but does not, by itself, confer federal question subject matter jurisdiction to the district courts to entertain claims brought under the Act. *Moses H. Cone Mem. Hosp.,* 460 U.S. at 25 n. 32, 103 S.Ct. 927.

We have spoken generally about the necessity for an independent ground of federal question jurisdiction when a claim is brought under the FAA, and have indicated in cases confirming an award pursuant to section 9 that jurisdiction would not exist unless there was an independent ground for jurisdiction. *Smiga v. Dean Witter Reynolds,* 766 F.2d 698, 703–04 (2d Cir.1985) (holding that jurisdiction existed because of, *inter alia,* diversity of parties and amount in controversy); *Kallen v. Dist. 1199, Nat'l Union of Hosp. and Health Care Employees,* 574 F.2d 723, 724–26 (2d Cir.1978) (implying that an independent ground for federal jurisdiction might be necessary to confirm a commercial arbitration award); *Ballantine Books v. Capital Distrib. Co.,* 302 F.2d 17, 19 (2d Cir.1962) (holding that jurisdiction to confirm award existed because parties were diverse and amount in controversy exceeded statutory amount); *see also Harry Hoffman Printing,* 912 F.2d at 611 n. 1 (implying that section 9 and section 10 should be viewed similarly with respect to their lack of ability to grant jurisdiction to the federal courts).

■ To the extent that our past cases did not explicitly hold that section 9 does not, by itself, constitute an independent grant of subject matter jurisdiction to federal courts, we now so hold. Our holding is consistent with the only other Courts of Appeals decisions we have found that have explicitly addressed this issue. *See Loral Corp. v. Swiftships,* 77 F.3d 420, 421–22 (11th Cir.1996); *Weststar Assoc. v. Tin Metals Co.,* 752 F.2d 5, 7–8 (1st Cir.1985); *Gen. Atomic Co. v. United Nuclear Corp.,* 655 F.2d 968, 969 (9th Cir.1981). Since there was no independent basis for subject matter jurisdiction, the district court lacked the authority to confirm the arbitration award. We thus vacate that portion of the district court's judgment.

## II. *Rule 11 Sanctions*

 Although the district court lacked jurisdiction to decide the merits of the underlying action, it retained the power to determine collateral issues, such as the appropriateness of sanctions. *See Willy v. Coastal Corp.,* 503 U.S. 131, 137–39, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992) (affirming imposition of Rule 11 sanctions even when it was later determined that district court lacked subject matter jurisdiction); *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 396, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (noting that "the imposition of a Rule 11 sanction is not a judgment on the merits of an action" and that the determination of whether an attorney abused the judicial process and what sanctions might be appropriate was a "collateral issue" that "may be made after the principal suit has been terminated").

 "[D]istrict courts generally have wide discretion in deciding when sanctions are appropriate. A court's decision to award Rule 11 sanctions is accordingly reviewed for abuse of discretion." *Morley v. Ciba–Geigy Corp.,* 66 F.3d 21, 24 (2d Cir.1995) (quotation marks and citations omitted). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell,* 496 U.S. at 405, 110 S.Ct. 2447.

In its ruling, the district court stated:

[T]he record suggests that Perpetual's motion constitutes vexatious and wanton economic coercion by a broker-dealer against customers who prevailed at arbi-tration (receiving a relatively small amount of compensatory damages) and now must bear the cost of defending a frivolous motion. I decline to let such a result stand and grant Respondent's motion for reasonable attorney's fees and costs pursuant to Fed.R.Civ.P. 11.

*Perpetual Sec.,* 2001 WL 826121, at *1.

 Rule 11 provides, in pertinent part:

(c) *Sanctions.* If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) [governing frivolous claims] has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) *How Initiated.*

(A) *By Motion.* A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served ... but shall not be filed with or presented to the court unless, within 21 days after service of the motion ... the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

Fed.R.Civ.P. 11. These procedural protections are intended to reduce the number of motions for sanctions and to provide opportunities for parties to avoid sanctions altogether. *See Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1327 (2d Cir. 1995).[2]

---

2. A district court can award sanctions absent a motion from a party. But if a district court determines that sanctions are appropriate, the court must allow the party threatened with sanctions to respond. Thus, even if we were to consider the district court's imposition of sanctions as being on its own initiative, Perpetual was not afforded an opportunity to respond because the district court did not enter an order to show cause. *See* Fed. R.Civ.P. 11(c)(1)(B) ("On its own initiative, the court may enter an order describing the specific conduct that appears to violate [Rule 11(b)] and directing an attorney, law firm, or

Perpetual correctly points out that appellees' motion for Rule 11 sanctions was not "made separately from other motions or requests." Fed.R.Civ.P. 11(c)(1)(A). Instead, appellees' request for sanctions was included in their memorandum addressing the underlying issues before the district court. Similarly, appellees did not serve their motion on Perpetual prior to filing it with the court. *See id.* Perpetual was therefore not afforded the benefits of the twenty-one day "safe harbor provision" allowing it the opportunity to withdraw or correct its allegedly frivolous claims.[3]

The district court's awarding of sanctions against Perpetual in contravention of the explicit procedural requirements of Rule 11 was thus an abuse of discretion.[4] *See Hadges,* 48 F.3d at 1327–29. We vacate the judgment of the district court and remand the case for reconsideration of the sanctions issue. Our decision to remand for reconsideration of the sanctions issue does not conflict with our decision in *Hadges* to reverse an award of sanctions for failure to adhere to the procedural requirements of Rule 11. *See Hadges,* 48 F.3d at 1329. In *Hadges,* it was clear that the sanctioned party would have corrected his misstatements had he been afforded the opportunity to do so; a reversal was thus appropriate. *See id.* at 1328. Here,

there is no indication that Perpetual would have corrected or amended its frivolous arguments even had it been given the opportunity. Therefore, after considering all of the circumstances, we believe a remand of the sanctions question is the more appropriate course of action. *See Baffa,* 222 F.3d at 57–58 (after determining that sanctions were not imposed according to Rule 11's procedural requirements, court vacated judgment and allowed district court to "revisit the issue of Rule 11 sanctions" on remand); *Nuwesra v. Merrill Lynch, Fenner & Smith,* 174 F.3d 87, 95 (2d Cir.1999) (per curiam) (remanding for reconsideration of sanctions despite "concerns about the evidentiary basis for" sanctions).

## CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed in part, vacated in part, and remanded. The district court is instructed to dismiss the case for lack of subject matter jurisdiction. If it wishes, it may reconsider the issue of sanctions consonant with the requirements of Rule 11. The parties shall bear their own costs.

---

party to show cause why it has not violated [the rule]."). In addition, a district court cannot, under Rule 11, award attorney's fees on its own initiative. Fed.R.Civ.P. 11(c)(2) (attorney's fees may be awarded on motion only).

**3.** Rule 11(c)(2)(A) provides that "[m]onetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2)." Fed.R.Civ.P. 11(c)(2)(A). We note that in *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.,* 222 F.3d 52 (2d Cir.2000), we determined that an order to pay attorney's fees was an abuse of discretion because it was a form of monetary penalty in contravention of Rule 11(c)(2)(A). *Id.* at 57.

**4.** The district court noted in its Memorandum and Order that "[d]uring an off-the-record sidebar" it informed Perpetual's attorney that it was inclined to grant appellees' request for sanctions. *Perpetual Sec.,* 2001 WL 826121, at *1 n. 2. The district court encouraged Perpetual "to ascertain whether the matter could be resolved without judicial intervention." *Id.* The district court's efforts to "save everyone time and money" while well-intentioned and in line with the purposes of Rule 11 fell short of meeting the strict procedural requirements of the rule.