**Cole SMITH, Plaintiff,**

v.

**RUSH RETAIL CENTERS, INC., Defendant.**

**No. CIV.A.SA–02A–1022–FB.**

United States District Court, W.D. Texas, San Antonio Division.

July 1, 2003.

---

Durwood D. Crawford, Goins, Underkofler, Crawford & Langdon, Dallas, TX, for Cole Smith, plaintiff.

Cynthia Michelle Benedict, Fulbright & Jaworski, San Antonio, TX, for Rush Retail Centers, Inc., defendant.

## ORDER ACCEPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

BIERY, District Judge.

Before the Court is the Report and Recommendation (docket no. 15) of the United States Magistrate Judge, plaintiff's written objections thereto (docket no. 17), and defendant's response to plaintiff's written objections (docket no. 18).

Where no party has objected to a Magistrate Judge's Report and Recommendation, the Court need not conduct a de novo review of the Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made."). In such cases, the Court need only review the Report and Recommendation and determine whether it is clearly erroneous or contrary to law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir.), *cert. denied*, 492 U.S. 918, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989).

On the other hand, any Report and Recommendation to which objection is made requires de novo review by the Court. Such a review means that the Court will examine the entire record, and will make an independent assessment of the law. The Court need not, however, conduct a de novo review when the objections are frivolous, conclusive, or general in nature. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir.1987).

The Court has thoroughly analyzed plaintiff's submission in light of the entire record. As required by Title 28 U.S.C. § 636(b)(1)(c), the Court has conducted an independent review of the entire record in this cause and has conducted a *de novo* review with respect to those matters raised by the objections. After due consideration, the Court agrees with the Magistrate Judge's conclusion that, because the Court has federal subject matter jurisdiction over a petition to vacate an arbitration award pursuant to section 10 of the FAA only when diversity of citizenship or federal question jurisdiction exists, because plaintiff has not alleged diversity jurisdiction, and because plaintiff has not alleged that his grounds for vacating the arbitration award require the resolution of a substantial question of federal law sufficient to accord federal question jurisdiction, the Court lacks federal subject matter jurisdiction over plaintiff's complaint.

The Supreme Court cases relied upon by plaintiff in his objections are relevant to the general question of whether an arbitration clause in an employment contract is covered by the FAA. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (Supreme Court addressed whether an arbitration clause in an employment contract "preempted" the ability of the EEOC to file a lawsuit for discrimination seeking victim-specific relief); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) (Supreme Court addressed whether an employment discrimination case should be dismissed pending arbitration pursuant to a clause in the employment contract). The cases do not hold that a federal court has subject matter jurisdiction over a claim for breach of an employment contract when the contract has an arbitration clause, but the plaintiff has not demonstrated either diversity or

federal question jurisdiction. The decision of the United States Supreme Court in *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), and the cases cited in the Report and Recommendation, stand for the proposition that a plaintiff must demonstrate federal question or diversity jurisdiction and that invocation of the FAA by itself will not suffice. While the FAA may be applicable to an underlying dispute, as in *Circuit City* and *Waffle House, Inc.*, it does not serve as an independent basis for jurisdiction. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25 n. 32, 103 S.Ct. 927.

ACCORDINGLY, IT IS THEREFORE ORDERED that the Report and Recommendation (docket no. 15) filed in this cause is ACCEPTED pursuant to 28 U.S.C. § 636(b)(1) such that plaintiff's complaint is DISMISSED for lack of federal subject matter jurisdiction; and defendant's counterclaim is DISMISSED for lack of federal subject matter jurisdiction, or, in the alternative and to the extent a pendent state law claim may have been alleged, because the Court declines to exercise supplemental jurisdiction over the counterclaim. Motions pending with the Court, if any, are dismissed as moot. Each side is to bear its respective costs.

It is so ORDERED.

## REPORT AND RECOMMENDATION

MATHY, United States Magistrate Judge.

Honorable Fred Biery United States District Judge.

Pursuant to the order of referral in the above-styled and numbered cause of action to the undersigned United States Magistrate Judge[1] and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(b)(1)(B) and rule 1(d) of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, effective January 1, 1994, the following report and recommendation is submitted for your review and consideration.

## I. JURISDICTION

Plaintiff's complaint alleges jurisdiction pursuant to 9 U.S.C. § 10 and 28 U.S.C. § 1331.

## II. PROCEDURAL HISTORY

This case was initiated on October 21, 2002, when plaintiff Cole Smith ("Smith") filed an original complaint against Rush Retail Centers, Inc. ("Rush") seeking to vacate an arbitration award.[2] In brief, Smith alleged he sold his business to Rush, and, as a part of the transaction, entered into a five-year employment contract. Thereafter, Rush terminated Smith's employment. Pursuant to the arbitration clause of the employment contract, Rush requested arbitration to resolve his objection to his termination. Arbitration was conducted in San Antonio, Texas and the arbitration panel[3] entered a decision denying recovery to Smith. Thereafter, plaintiff filed this lawsuit seeking an order requiring the retrial of the case before a different arbitration panel, or, alternatively, an order requiring retrial before the same

1. Docket no. 14.

2. Docket no. 1.

3. Although plaintiff's complaint refers to "the Arbitrator," the final arbitration decision indicates that a panel of three arbitrators heard the dispute and two arbitrators agreed in the decision. *Id.,* exhibit 6 at 1 and 9. Accordingly, this report refers to "arbitrators" or the arbitration panel.

arbitration panel, but with provisions in the order to provide specific instructions as to how the employment contract should be interpreted, "that relevant evidence be admitted and considered," and that "applicable Texas law be applied to the interpretation" of the employment contract.[4] Plaintiff also seeks recovery of "all costs incurred."[5] Plaintiff filed an appendix to his complaint consisting of the transcript of record before the arbitrators, exhibits offered, the arbitration decision, and post-arbitration hearing pleadings.[6]

On December 3, 2002, defendant filed its answer to the complaint which included a counterclaim seeking enforcement of the arbitration award and an award of attorney's fees and costs.[7] Specifically, defendant asserted "[p]laintiff was contractually prohibited from seeking vacatur of the arbitration award. Plaintiff has breached this contract, thereby entitling defendant to attorney's fees."[8]

**4.** *Id.* at 3.

**5.** *Id.*

**6.** Specifically, the appendix consists of six documents, marked as exhibit 1 through 6, respectively: plaintiff's post-hearing brief, Rush's post hearing brief, plaintiff's motion for reconsideration of excluded evidence, Rush's response, the arbitration panel's order denying reconsideration, and the final decision of the arbitration panel, captioned "binding arbitration decision and opinion." In support of his complaint, plaintiff also has tendered the transcript of record and notebooks containing the exhibits offered during the arbitration proceedings. *See* docket no. 1, Affidavit of Durwood D. Crawford, and attachments.

**7.** Docket no. 2.

**8.** Docket no. 2 at 3.

**9.** Docket no. 5. An attachment to the brief consists of excerpts from the arbitration record.

On December 20, 2002, plaintiff filed a brief in support of his petition to vacate the arbitration award.[9] On January 17, 2003, Rush filed a brief in response.[10] On February 3, 2003, plaintiff filed a reply brief.[11] Rush filed a sur-reply on March 18, 2003,[12] a sur-response on May 20, 2003,[13] and Smith filed a sur-response to Rush's sur-response on May 20, 2003.[14] On or about May 20,2003, this case was referred to the undersigned.

## III. STATEMENT OF THE CASE

On September 1, 2000, the parties entered into a five-year written employment agreement.[15] The employment agreement contains the following two provisions which relate to the termination of plaintiff's employment:[16]

4.2 *Termination For Cause.* This Agreement may be terminated by the Company for "Cause" (as defined in Section 8.2 herein) upon written notice

**10.** Docket no. 6. Defendant attached four exhibits to his response, marked as exhibits A through D, respectively: the employment agreement in question; the July 13, 2001 letter terminating plaintiff's employment; resumes of the three arbitrators; and the "binding arbitration decision and opinion."

**11.** Docket no. 7.

**12.** Docket no. 10.

**13.** Docket no. 12.

**14.** Docket no. 13.

**15.** Docket no. 1 at 2; docket no. 6, exhibit A.

**16.** The employment agreement also contains a provision for "termination by the company without cause," which appears to require defendant to pay plaintiff his monthly base salary of approximately $7,084, through the remainder of the term of the agreement, as well as benefits. Docket no. 6, exhibit A at 3, § 4.1.

thereof given by the Company to Employee .... [17]

\* \* \* \* \* \*

8.2 *"Cause"* shall be exclusively limited to the following, as determined by the Board in its sole judgment: (i) Employee breaches any material terms of this Agreement; (ii) Employee is convicted of a felony; (iii) Employee fails, after a least one warning, to perform duties assigned under this Agreement (other than a failure due to death or physical or mental disability); (iv) Employee intentionally engages in conduct which is demonstrably and materially injurious to the Company; (v) Employee commits fraud or theft of personal or Company property from Company premises; (vi) Employee falsifies Company documents or records; (vii) Employee engages in acts of gross carelessness or willful negligence to endanger life or property on Company premises; (viii) Employee uses, distributes, or is under the influence of illegal drugs, alcohol, or other intoxicant on Company premises; (ix) Employee possesses or stores hand guns or Company premises; or (x) Employee intentionally violates state, federal or local laws and regulations in the course and scope of his employment.[18]

On July 13, 2001, plaintiff was notified by letter that his employment was terminated immediately.[19] The letter was signed by Robin M. Rush, defendant's vice president, and provided, in sum, that the termination was due to

repeated failure to complete assigned and required position duties after warn-

ing and notice; deficient managerial skills; abrasive and abusive disrespect when dealing with your employees; actions or lack of actions which endanger the assets and employees of the company; disregard of direct instructions from you superiors and attempting to deceive them following such disregard[.][20]

The three-page letter also included information of specific instances of alleged transgressions in support of the decision to terminate.[21]

Plaintiff contested his termination. After informal dispute resolution techniques failed to resolve the dispute, the parties submitted their dispute to binding arbitration in accordance with the arbitration clause of the employment agreement. Article 7 of the employment agreement states:

Except for the provisions of Articles 5 and 6 of this Agreement dealing with proprietary property, confidential information and restrictive covenants, with respect to which the Company expressly reserves the right to petition a court directly for injunctive and other relief, any claim, dispute or controversy of any nature whatsoever, including but not limited to tort claims or contract disputes between the parties to this Agreement or their respective heirs, executors, administrators, legal representatives, successors and assigns, as applicable, arising out of related to Employee's employment or the terms and conditions of this Agreement, including the implementation, applicability or interpretation thereof, shall be resolved

17. *Id.,* exhibit A at 4, § 4.2. Unlike termination by the company without cause, termination for cause obligated the company to pay plaintiff his monthly base salary, subject to standard deductions, earned *pro rata* to the date of termination. *Id.*

18. *Id.,* exhibit A at 7, § 8.2.

19. Docket no. 6, exhibit B.

20. *Id.,* exhibit B at 1.

21. *Id.,* exhibit B at 1–3.

in accordance with the dispute resolution procedures set forth in Appendix A attached hereto and made a part hereof.[22]

Appendix A, in turn, includes three pages of "Dispute Resolution Procedures," which, in sum, requires good faith negotiations within 45 days, and, if informal negotiations do not settle the dispute, for "binding arbitration."[23] The agreement also provides: "This arbitration provision shall be government by, and all rights and obligations specifically enforceable under and pursuant to, the Federal Arbitration Act (9 U.S.C. § 1, *et seq.*)."[24]

Arbitration hearings were held on May 14, 15, and 16, 2002 in San Antonio, Texas before a panel of three arbitrators, one selected by plaintiff, one selected by defendant, and "the third selected by the two arbitrators so selected."[25] Both sides were represented by counsel. After hearing extensive testimony reflected in an arbitration hearing transcript of 1,004 pages and admitting into evidence "[i]n excess of one hundred twenty-one (121) rather voluminous exhibits" on behalf of both parties,[26] the arbitrators found that plaintiff's employment had been validly terminated for cause.[27] More specifically, the arbitrators found plaintiff had "failed to prove by a preponderance of the evidence that Respondent violated the Employment Agreement, and particularly Sections 4.2 or 8.2

thereof."[28] The arbitrators explained that:

the Official Record is replete with examples of conduct acts and omissions by Claimant establishing that:

a) Claimant, after at least one warning, failed to perform duties assigned under the Employment Agreement;

b) Claimant engaged in at least one act of gross carelessness or willful negligence endangering life or property; and

c) Claimant intentionally engaged in conduct that is demonstrably and materially injurious to the Company [Respondent].[29]

The arbitrators found that: section 4.2 of the employment agreement provided that "the Company" could terminate plaintiff's employment for cause, "the Company" had "acted through its duly authorized officer or other official" when terminating plaintiff's employment, and, "based upon the Official Record as a whole, that Respondent [defendant] substantially complied with" section 4.2 governing termination "for cause."[30] The arbitrators expressly rejected plaintiff's argument that "somehow the failure to have official Board action" to direct that plaintiff be fired indicated a failure to terminate for cause, a breach of the employment agreement, or a lack of the "good faith" plaintiff argued was required.[31] The arbitrators declined

---

22. *Id.*, exhibit A at 6, Article 7.

23. *Id.*, exhibit A, appendix A at A–1, §§ B and D.

24. *Id.*, exhibit A, appendix A at A–3, § D(8).

25. *Id.* exhibit D at 1; docket no. 1, exhibit 6 at 1; *see also* docket no. 6, exhibit A, appendix A at A–1, § D(1).

26. Docket no. 6, exhibit D at 2.

27. Two arbitrators concurred in the result; one arbitrator disagreed. Docket no. 6, exhibit D at 9; docket no. 1, exhibit 6 at 9.

28. Docket no. 6, exhibit D at 4; docket no. 1, exhibit 6 at 9.

29. Docket no. 6, exhibit D at 4; docket no. 1, exhibit 6 at 4.

30. Docket no. 6, exhibit D at 6; docket no. 1, exhibit 6 at 6.

31. Docket no. 6, exhibit D at 6–7 and 8; docket no. 1, exhibit 6 at 6–7 and 8.

to award defendant attorneys' fees and costs, finding that plaintiff's claims were "unsuccessful," but not "unsupportable." [32]

Plaintiff now seeks to vacate the arbitration award arguing, in sum, that plaintiff's employment was not terminated "for cause" in part because defendant's vice president terminated plaintiff's employment, but there was no proof the Board of Directors of defendant authorized the termination at all or before it occurred. More specifically, plaintiff argues the arbitrators exceeded their powers by creating a new contract for the parties; engaged in misconduct under the Federal Arbitration Act ("FAA") by: revising the contract; refusing to apply Texas law; and by refusing to admit certain relevant evidence. [33] Defendant opposes vacating the arbitration award, arguing, in part, that the parties' arbitration provisions is a contractual

waiver of the right to seek vacation of an arbitration award, an argument the Court construes as a jurisdictional challenge. [34]

## IV. ISSUE

Whether the Court has subject matter jurisdiction over plaintiff's complaint to vacate the arbitration award.

## V. ARGUMENT AND ANALYSIS

Defendant has argued that the parties, through the arbitration provision of the employment agreement, contractually waived the right to seek to vacate or modify the arbitration award and seeks dismissal of the complaint. [35] Arguably, defendant's position could be construed as a challenge to the Court's subject matter jurisdiction to address the merits of plaintiff's request that the arbitration award be vacated. [36] Nevertheless, the Court has "a

---

**32.** Docket no. 6, exhibit D at 7; docket no. 1, exhibit 6 at 7

**33.** Docket no. 1 at 2–3.

**34.** Docket no. 6 at 24. Defendants other arguments include, in part that: plaintiff has ignored the onerous standard for review of an arbitration award; plaintiff's argument that the arbitrators exceeded their authority is not supported factually or legally; even if the Board did not make the initial determination to discharge plaintiff, as required by the contract, the Board subsequently ratified the decision made by a corporate delegate; in claiming that the arbitrators engaged in a manifest disregard of Texas law, plaintiff has misconstrued the employment agreement and the applicable law; to the extent plaintiff is merely alleging that the arbitrators engaged in manifest disregard of the facts, the allegation is not a basis for vacating the award; the parties did not stipulate to the admission of certain evidence; and plaintiff's claim that the arbitrators based their decision on evidence from a witness plaintiff was not allowed to impeach, ignores the "score of direct evidence from other witnesses and exhibits recounting plaintiff's misconduct and relied on by the Panel." *Id.* 6–24. In light of the recommendation that the Court lacks subject

matter jurisdiction, it is not necessary or appropriate for the Court to reach defendant's substantive arguments, including any argument that the arbitration provision effectively waived either side's right to seek any vacation or modification of the final award based on the clause that states: "The award rendered by the arbitrators (a) shall be final, (b) shall not constitute a basis for collateral estoppel as to any issue and (c) *shall not* be subject to vacation or modification." Docket no. 6, exhibit A, appendix A at § D–10 (emphasis added).

**35.** Docket no. 2 at 3 (dismissal is sought pursuant to FED.R.CIV.P. 12(b)(6)); docket no. 6 at 24.

**36.** The Court notes that defendant's answer to the complaint "admits the averments contained in Paragraph II of Plaintiff's Original Complaint and that Plaintiff seeks to bring this suit for vacatur under the Federal Arbitration Act, but Defendant denies that any an all grounds for vacatur as alleged in Plaintiff's Original Complaint can be satisfied." Docket no. 2 at 2. This statement appears to be an admission that the Court has subject matter jurisdiction as alleged in Section II of the complaint. Docket no. 1 at 2. Further, defen-

duty to raise the issue of subject matter jurisdiction *sua sponte.*[37] Accordingly, the Court first addresses its own subject matter jurisdiction.

In framing the analysis of subject matter jurisdiction, the Court makes a threshold inquiry into the nature of plaintiff's claim(s). Plaintiff has initiated this case "seeking to vacate an arbitration award and for cause of action,"[38] requesting relief solely relating to the arbitration or re-arbitration of the parties' dispute. Therefore, the "cause of action" pleaded by the complaint appears to be limited to the request to vacate the arbitration award, and not any separate cause of action, for example, for breach of contract. But, as noted, plaintiff alleges jurisdiction under section 10 of the FAA and federal question jurisdiction. To the extent plaintiff's complaint should be read as pleading a breach of contract cause of action other than seeking to vacate the arbitration award, such a claim should be dismissed on the ground that plaintiff has not adequately pleaded or demonstrated that the Court has subject matter jurisdiction to resolve a contract dispute between two parties who reside in Texas, either under federal subject matter jurisdiction or the FAA or both.

With respect to plaintiff's request that the arbitration award be vacated, the Court recognizes that, generally, any court's "review of an arbitration award is extraordinarily narrow."[39] For example, in the collective bargaining context, the United States Supreme Court has held that so long as the arbitrator's decision "draws its essence from the collective bargaining agreement" and the arbitrator is not fashioning "his own brand of industrial justice," the award cannot be set aside.[40] In an action to vacate an arbitration award

---

dant asserts a counterclaim of breach of contract for which defendant seeks an award of attorney's fees and costs. Docket no. 2 at 3. By logic, the counterclaim is either premised on the same federal subject matter jurisdiction alleged in plaintiff's complaint and admitted by defendant or is intended to allege a pendent state law claim. Because this report recommends dismissal of plaintiff's complaint for want of federal subject matter jurisdiction, defendant's counterclaim should be dismissed for lack of federal subject matter jurisdiction or because the Court declines to exercise supplemental jurisdiction over the counterclaim to the extent it may be premised on state law. *See Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir.1999) (general rule when court dismisses all federal claims before trial is "to dismiss any pendent claims," and dismissal should "expressly be without prejudice so that the plaintiff may re-file his claim in the appropriate court"); *McClelland v. Gronwaldt*, 155 F.3d 507, 520 (5th Cir.1998) (recognizing general rule and acknowledging that Supreme Court has "counseled that the dismissal of all federal claims weighs heavily in favor of declining jurisdiction;" federal court to consider "judicial economy, convenience, fairness, and comity" to decide whether to exercise jurisdiction over pendent state-law claims; "when a balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction").

37. *American Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir.2003); *H & D Tire & Automotive–Hardware, Inc. v. Pitney Bowes, Inc.*, 227 F.3d 326, 328 (5th Cir.2000), *cert. denied*, 534 U.S. 894, 122 S.Ct. 214, 151 L.Ed.2d 152 (2001).

38. Docket no. 1 at 1.

39. *Gateway Tech., Inc. v. MCI Telecommunications Corp.*, 64 F.3d 993, 996 (5th Cir.1995) (quoting *Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 413 (5th Cir.1990)).

40. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987) (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)).

the court does not re-try matters decided by arbitration.

The parties arbitration agreement expressly provides that the arbitration provision is governed by the FAA.[41] Section 10 of the FAA circumscribes a court's review in a proceeding to vacate by providing that:

> an award shall not be vacated unless: (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers.[42]

Before a court may reach these statutory bases for vacating an arbitration award governed by the FAA, however narrow, the court must have subject matter jurisdiction to resolve the dispute.

█ Specifically in reference to a federal court's subject matter jurisdiction to decide a petition to vacate an arbitration award governed by the FAA, the United States Supreme Court has explained that:

The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing an regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise.... **[T]here must be diversity of citizenship or some other independent basis for federal jurisdiction** ....˙for enforcement of the Act is left in large part to the state courts.[43]

In light of the Supreme Court's explanation, several federal appeals courts have held that section 10 of the FAA, "allowing federal district courts to vacate arbitration awards, does not confer upon federal district courts subject matter jurisdiction."[44] Noting the United States Supreme Court in *Moses H. Cone Memorial Hospital* was analyzing sections 3 and 4 of the FAA, the United States Court of Appeals for the Second Circuit explained "it would be anomalous to conclude... that section 4 confers no jurisdiction to compel arbitration, but that section 10 confers jurisdiction to vacate an award once arbitration takes

41. *See Gateway Tech., Inc.,* 64 F.3d at 997 n. 3 (when contract is silent on law governing arbitration, the FAA governs). *See also Volt Info. Sciences, Inc. v. Bd. of Trustees Leland Stanford Jr. Univ.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488 (1989) ("Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, *see Mitsubishi [Motors Corp. v. Soler Chrysler–Plymouth, Inc.],* supra, 473 U.S. [614], at 628, 105 S.Ct. [3346], at 3353, 87 L.Ed.2d 444[ (1955) ], so too may they specify by contract the rules under which that arbitration will be conducted.").

42. *Misco, Inc.,* 484 U.S. at 36, 108 S.Ct. at 370 (citing 9 U.S.C. § 10(a)(1)-(4)).

43. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 941–42 n. 32, 74 L.Ed.2d 765 (1983) (emphasis added).

44. *Perpetual Sec., Inc. v. Tang,* 290 F.3d 132, 136 (2d Cir.2002); *see Baltin v. Alaron Trading Corp.,* 128 F.3d 1466, 1469 (11th Cir. 1997), *cert. denied,* 525 U.S. 841, 119 S.Ct. 105, 142 L.Ed.2d 84 (1998); *Minor v. Prudential Sec., Inc.,* 94 F.3d 1103, 1104–05 (7th Cir.1996), *cert. denied,* 519 U.S. 1113, 117 S.Ct. 954, 136 L.Ed.2d 841 (1997); *Ford v. Hamilton Inv., Inc.,* 29 F.3d 255, 257 (6th Cir.1994); *Garrett v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 882, 884 (9th Cir.1993); *see also Judd v. Texakoma Fin., Inc.,* No. 3:96–CV–2604–P, 1996 WL 734940, at *4 (N.D.Tex. Dec. 11, 1996) (dismissing because from face of motion to vacate "it appears that the dispute does not involve a substantial question of federal law").

place."[45] Accordingly, there must be an independent basis for subject matter jurisdiction before court can consider a motion to vacate an arbitration award under the FAA.[46] Further, when asserting a claim under section 10 in federal court, plaintiff must demonstrate that federal diversity or federal question jurisdiction exists.[47]

█ In this case, plaintiff does not allege diversity jurisdiction.[48] Further, there is no basis in the complaint for the Court to conclude the parties are of diverse citizenship; indeed, plaintiff's complaint alleges both parties reside in Texas.[49] Nor does plaintiff's complaint allege any specific amount in controversy. But, plaintiff's complaint does seek to allege federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.[50] Federal question jurisdiction arises only when exists when the complaint standing alone "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."'[51] The federal question "must be disclosed upon the face of the complaint."[52]

Plaintiff seeks to have the arbitration award vacated because the arbitrators allegedly exceeded their authority by creating a new contract for the parties and because the arbitrators "engaged in 'misconduct' under the [FAA] as the same has been interpreted by the Federal Courts by revising the agreement and by refusing to apply Texas law as required by the Arbitration provision."[53] Plaintiff additionally alleges that the arbitrators engaged in misconduct by refusing to admit certain relevant evidence.[54] These allegations do not raise a federal question. First, plaintiff has not alleged any violation of federal law. Although plaintiff alleges the arbitrators violated the FAA, as stated above, the Supreme Court and federal appeals courts have held that such claims do not create an independent federal question. Second, plaintiff's right to relief does not depend on the "resolution of a substantial question of federal law."[55] Plaintiff is seeking to vacate the arbitration award based on the alleged mistakes of the arbitrators. As the Seventh Circuit has explained:

> [A] motion to vacate on the grounds of fraud, corruption, undue means, evident partiality, and failure to consider pertinent and material evidence, does not require the resolution of any federal issue, let alone a substantial question of

---

**45.** *Harry Hoffman Printing, Inc. v. Graphic Communications Int'l Union, Local 261*, 912 F.2d 608, 611 n. 1 (2nd Cir.1990) (citation omitted). The Court also observed: "Further, to read section 10 as bestowing jurisdiction to vacate absolutely any arbitration award would open the federal courts to a host of arbitration disputes, an intent that we should not readily impute to Congress." *Id.*

**46.** *Perpetual Sec., Inc.*, 290 F.3d at 136; *Minor*, 94 F.3d at 1105.

**47.** *Id.*

**48.** Docket no. 1 at 1.

**49.** *Id.*

**50.** *Id.* at 1–2.

**51.** *Franchise Tax Bd. of the State of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983).

**52.** *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127–28, 94 S.Ct. 1002, 1003, 39 L.Ed.2d 209 (1974).

**53.** Docket no. 1 at 2.

**54.** *Id.* at 2–3.

**55.** *See Franchise Tax Bd.*, 463 U.S. at 28, 103 S.Ct. at 2856.

federal law.[56]

The Court notes that the Second Circuit acknowledged in *Perpetual Securities, Inc.* that it had elsewhere **"intimated"** that an allegation that an arbitration panel manifestly disregarded **federal** law will give rise to federal question jurisdiction."[57] Both plaintiff's complaint and plaintiff's other pleadings in this Court acknowledge that Texas law governs the interpretation of the employment agreement. And, as in *Perpetual Securities, Inc.*, plaintiff's "allegations cannot be the basis for subject matter jurisdiction,"[58] in this case, because plaintiff's contentions as reflected on the face of the complaint do not demonstrate the panel's manifest disregard of federal law. Rather, plaintiff's complaint supports the conclusory allegation of "manifest disregard of the law" in reference to plaintiff's contention that the arbitrators "engaged in misconduct under the ... [FAA] ..." as same has been interpreted by the Federal Courts by revising the agreement [to allow defendant's vice-president to terminate plaintiff's employment for "the Company"] and by refusing to apply Texas law as required by the arbitration provision" and by "refusing to allow the introduction of relevant impeachment evidence."[59] These more specific allegations addressing interpretation of the employment agreement, Texas law, and admission of evidence do not sufficiently plead a claim of manifest disregard of federal law to give rise to federal question jurisdiction. Moreover, if the Court considers plaintiff's brief in support of the petition to vacate in assessing federal question jurisdiction,[60] the brief continues to focus on the arguments, already advanced to the arbitration panel, that defendant's vice-president could not terminate plaintiff's employment "for cause" for "the Company" because there is no proof defendant's Board of Directors made the decision, plaintiff was not first called before the Board to discuss the termination, plaintiff and the President of the Board "understood" (in an apparent unwritten agreement apart from the written employment agreement) that plaintiff would be terminated only by action of the Board,[61] a duty of "good faith and fair dealing" recognized in Texas law should have been applied to the termination decision, and impeachment evidence should have been admitted and considered.[62] These arguments demonstrate plaintiff's disagreement with the final "binding arbitration decision and opinion" and desire for this Court to review plaintiff's version of the facts and the law, but not manifest disregard of federal law sufficient to confer federal question jurisdiction.

In sum, because the Court has federal subject matter jurisdiction over a petition to vacate an arbitration award pursuant to

**56.** *Minor*, 94 F.3d at 1105.

**57.** *Perpetual Sec., Inc.*, 290 F.3d at 139 (emphasis added) (citing *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 27 (2nd. Cir. 2000), *cert. denied*, 531 U.S. 1075, 121 S.Ct. 770, 148 L.Ed.2d 669 (2001)); *see also Judd*, 1996 WL 734940, at *5 (noting that "[i]t is conceivable that [disregard of the law and public policy grounds] could involve the resolution of a substantial question of federal law" but finding that because underlying claims were based in state law, "it thus stands to reason that any law that may have been 'manifestly disregarded' or any public policy that may have been violated was state in nature.").

**58.** 290 F.3d at 139.

**59.** Docket no. 1 at 2–3.

**60.** *See Minor*, 94 F.3d at 1105 (examines the face of the motion to vacate to determine if federal question jurisdiction exists); *Judd*, 1996 WL 734940, at *5 (same).

**61.** Docket no. 5 at 3.

**62.** *E.g., id.* at 2–22.

section 10 of the FAA only when diversity of citizenship or federal question jurisdiction exists, because plaintiff has not alleged diversity jurisdiction, because plaintiff's grounds for vacating the arbitration award do not appear to require the resolution of a substantial question of federal law sufficient to accord federal question jurisdiction, the Court lacks federal subject matter jurisdiction over plaintiff's complaint. Accordingly, it is not necessary or proper for the Court otherwise to address the merits of the parties' claims.

## VI. *RECOMMENDATION*

Based on the foregoing analysis, it is recommended that: plaintiff's complaint [63] be **DISMISSED** for lack of federal subject matter jurisdiction; and defendant's counterclaim be **DISMISSED** for lack of federal subject matter jurisdiction, or, in the alternative and to the extent a pendent state law claim may have been alleged, because the Court declines to exercise supplemental jurisdiction over the counterclaim.

## VII. *INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT/APPEAL*

The United States District Clerk shall serve a copy of this Report and Recommendation on each and every party either (1) by certified mail, return receipt requested, or (2) by facsimile if authorization to do so is on file with the Clerk. According to 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b), any party who desires to object to this report must serve and file written objections to the Report and Recommendation within 10 days after being served with a copy unless this time period is modified by the District Court. A party

filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.** A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a de novo determination by the District Court.[64] Additionally, any failure to file written objections to the proposed findings, conclusions and recommendations contained in this Report and Recommendation within 10 days after being served with a copy shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[65]

June 6, 2003.

---

**63.** Docket no. 1.

**64.** *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985).

**65.** *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir.2000); *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1428 (2002).